DECISION AND JUDGMENT ENTRY
 {¶ 1} Tamara Kaye Matteson appeals her conviction in the Vinton County Common Pleas Court for possession of cocaine, a violation of R.C. 2925.11(A) and 2925.11(C)(4)(c). Matteson contends that the record does not contain sufficient evidence to support her conviction. Because we find that the record contains evidence which, if believed, supports a finding that Matteson knowingly possessed more than twenty-five grams of cocaine, we disagree. Matteson also contends that her conviction is contrary to the manifest weight of the evidence. Because we find that the state presented substantial evidence upon which a reasonable trier of fact could find that the state established all the essential elements of the offense beyond a reasonable doubt, we disagree. Accordingly, we overrule Matteson's assignments of error and affirm the judgment of the trial court.
 I. {¶ 2} The Vinton County Grand Jury indicted Matteson on: (1) one count of knowingly possessing cocaine in an amount exceeding twenty-five grams, a violation of R.C. 2925.11(A) and 2925.11(C)(4)(c); (2) one count of possession of a weapon while under disability, a violation of R.C. 2923.13(A)(4); and (3) one count of possessing criminal tools, a violation of R.C. 2923.24(A). Matteson pled not guilty to all counts.
 {¶ 3} Matteson filed a motion to suppress evidence obtained during the execution of a search warrant at her residence. The court denied her motion to suppress. After conducting discovery, the state moved to dismiss the second count of the indictment. The case proceeded to a jury trial on the charges for possession of cocaine and possession of criminal tools.
 {¶ 4} The evidence presented at trial revealed that law enforcement officers were observing the residence located at 127 Monahan Avenue in Hamden, Vinton County, Ohio, because they had received numerous calls reporting heavy and unusual traffic at the house. Matteson is the only resident of the house, which her mother's ex-husband owns. However, Matteson has allowed guests to stay with her. The house has two bedrooms upstairs, and a kitchen, living room, bathroom, and one bedroom downstairs.
 {¶ 5} On March 14, 2005, Juanita Daugherty received a telephone call from Outhay Sengkeophainh. At Sengkeophainh's request, Daugherty agreed to give him a ride from Matteson's house to Meeksville, Ohio. Officers observed Daugherty arrive at Matteson's house around 8:00 p.m. She briefly went inside Matteson's home. While there, she saw Sengkeophainh take a large clear bag, which contained several smaller baggies of cocaine, into the downstairs bedroom. She did not see Sengkeophainh go upstairs. Daugherty and Sengkeophainh left together about five minutes after Daugherty arrived.
 {¶ 6} Matteson was not home when Daugherty picked up Sengkeophainh. Matteson left her home at approximately 10:00 a.m. that morning and traveled to Columbus with her mother to get new eyeglasses. The two stopped for shopping in Lancaster. Matteson arrived home around 10:30 p.m.
 {¶ 7} Meanwhile, officers observed Daugherty driving erratically shortly after she and Sengkeophainh left Matteson's house. They stopped Daugherty's car, found cocaine, and detained Daugherty and Sengkeophainh. Daugherty told the officers that she observed Sengkeophainh at Matteson's home with a large clear bag containing several smaller baggies of cocaine. She also stated that Sengkeophainh tried to hide the cocaine. The law enforcement officers used Daugherty's statement, along with their own observations, to obtain a search warrant for Matteson's home. The officers executed the warrant sometime between 11:00 p.m. and midnight that night.
 {¶ 8} When the officers arrived to execute the warrant, Matteson was at home with guests Chuck Waters, Ronald Bobo, and Sandy Bobo. The officers found small amounts of white powder, white powder residue, digital scales, and drug paraphernalia throughout the home, including the kitchen and all three bedrooms. Drugs and drug paraphernalia were in plain view on the kitchen table.
 {¶ 9} In the large bedroom on the second floor of Matteson's home, Sergeant Shawn Justice found a shiny purse or pocketbook in the bottom dresser drawer. Inside the purse, Sgt. Justice found over sixty-six grams of white powder in several small plastic bags. The purse also contained cash, a hair barrette, a bottle of Princess Lavea cleansing gel, Suave skin firming lotion, lip balm, copper mesh, and cotton swabs. Under the purse, Sgt. Justice found a loaded handgun. The bed in the room had a feminine bedspread, and the occupant of the room left hairspray, make-up, and a curling iron on or near the dresser. Sgt. Justice also found a digital scale with white powder residue in the bedroom.
 {¶ 10} The second upstairs bedroom contained a desk and a computer, but no bed. Sgt. Justice found a credit card bill addressed to Matteson on the desk. Additionally, he found scales and a spoon with white powder residue in the room.
 {¶ 11} In the downstairs bedroom, Sergeant Brian Newvahner found male clothing on the floor and a birthday card with the name "Shawn" on the front. Officers did not find a large quantity of white powder in the downstairs bedroom.
 {¶ 12} The state presented the expert testimony of Erin Reed, who works for the Ohio Bureau of Criminal Identification and Investigation. Reed tested the evidence seized from Matteson's home. Reed testified that the sixty-six grams of white powder found in the purse tested positive for cocaine. Reed also testified about the various other items seized from Matteson's home that tested positive for cocaine.
 {¶ 13} Matteson presented the testimony of her mother, who stated that Matteson was with her until approximately 10:30 p.m. on the date in question. On cross examination, Matteson's mother testified that after Matteson's arrest, she hired Sengkeophainh to do "stone work" at her business and gave Sengkeophainh a place to stay.
 {¶ 14} Sandra Bobo testified that she and her husband were at Matteson's house to pick up some borrowed DVDs when officers executed the warrant. Bobo testified that she was in the kitchen, living room, and bathroom at Matteson's house. She stated that she did not think she saw any cocaine in the home.
 {¶ 15} Finally, Daugherty testified that she saw Sengkeophainh with a large bag containing several smaller baggies of cocaine, and it seemed like he was trying to hide it. She testified that she saw him take the cocaine into the downstairs bedroom. She did not see him go upstairs.
 {¶ 16} The jury found Matteson guilty of possessing more than twenty-five grams of cocaine and guilty of possessing criminal tools. The trial court sentenced Matteson to a mandatory one-year prison term on the cocaine possession count and to a concurrent sentence of ninety days on the criminal tools count.
 {¶ 17} Matteson timely appeals her possession of cocaine conviction, asserting the following assignments of error: I. "The State presented insufficient evidence to obtain a conviction." II. "The jury's verdict is against the manifest weight of the evidence."
 II. {¶ 18} In her first assignment of error, Matteson contends that the state failed to present sufficient evidence to sustain her conviction for possession of cocaine.
 {¶ 19} When reviewing a case to determine whether the record contains sufficient evidence to support a criminal conviction, our function "is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v.Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. See, also, Jackson v. Virginia (1979), 443 U.S. 307, 319.
 {¶ 20} This test raises a question of law and does not allow us to weigh the evidence. State v. Martin (1983), 20 Ohio App.3d 172, 175. Rather, the test "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson, 443 U.S. at 319. We reserve the issues of the weight given to the evidence and the credibility of witnesses for the trier of fact. State v. Thomas (1982), 70 Ohio St.2d 79, 79-80; State v.DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 21} Here, the state alleged that Matteson violated R.C. 2925.11, which provides in relevant part that no person shall possess cocaine in an amount that equals or exceeds twenty-five grams. Matteson does not dispute that the purse found in her home contained over twenty-five grams of cocaine. However, Matteson contends that the state failed to present sufficient evidence to show that she possessed the cocaine.
 {¶ 22} R.C. 2925.01(K) states: "'Possess' or `possession' means having control over a thing or substance, but it may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." "Possession" of a particular item of contraband may be actual or constructive. State v. Wolery (1976), 46 Ohio St.2d 316, 329; State v.Haynes (1971), 25 Ohio St.2d 264, 269-70. "Constructive possession" exists when an individual is able to exercise dominion and control over an item, even if the individual does not have immediate physical possession of it. State v. Hankerson (1982), 70 Ohio St.2d 87, syllabus;Wolery at 329. Additionally, for constructive possession to exist, "[i]t must also be shown that the person was conscious of the presence of the object." Hankerson at 91.
 {¶ 23} Dominion and control, as well as whether a person was conscious of the presence of an item of contraband, may be established by circumstantial evidence. See State v. Jenks (1991), 61 Ohio St.3d 259,272-73. When the state relies on circumstantial evidence to prove an essential element of the offense charged, there is no need for such evidence to be irreconcilable with any reasonable theory of innocence in order to support a conviction. Id. Moreover, two or more persons may have joint constructive possession of a particular item. State v.Mann (1993), 93 Ohio App.3d 301, 308; see, also, State v. Callender
(Jan. 20, 1998), Franklin App. No. 97APA03-391 (fact that passenger was deemed to have constructively possessed illegal drugs did not necessarily exonerate defendant driver).
 {¶ 24} While a defendant's mere presence in an area where drugs are located does not conclusively establish constructive possession, see, e.g., State v. Cola (1991), 77 Ohio App.3d 448, 450, a defendant's proximity to drugs may constitute some evidence of constructive possession. State v. Williams, Ross App. No. 03CA2736, 2004-Ohio-1130, at ¶ 25, citing State v. Fairrow (Nov. 27, 1995), Ross App. No. 95CA2096. Mere presence in the vicinity of drugs, coupled with one other factor probative of dominion or control over the contraband, may establish constructive possession. Williams, supra, at ¶ 25. See, also,State v. Fugate (Oct. 2, 1998), Scioto App. No. 97CA2546; State v.Rocker (Sept 1, 1998), Franklin App. No. 97APA10-1341.
 {¶ 25} Likewise, while mere ownership or occupation of the premises where drugs are found is insufficient to establish possession, such evidence coupled with one other factor probative of dominion or control over the contraband may establish possession. State v. Johnson (Nov. 21, 1985), Cuyahoga App. No. 49746, (defendant constructively possessed drug paraphernalia when defendant owned the premises and circumstantial evidence indicated that the bedroom in which the paraphernalia was discovered was the defendant's bedroom). See, also, State v. Riggs
(Sept. 13, 1999), Washington App. No. 98CA39; Fugate, supra. Additionally, constructive possession may be established when the defendant occupies the premises with others, the drugs are found in the defendant's living area, and drugs are in plain view throughout the residence. Fugate, supra, citing State v. Boyd (1989),63 Ohio App.3d 790, 796-97 (despite co-defendant's claim that drugs belonged to her, record contained sufficient evidence to establish defendant's constructive possession of drugs where cocaine was found in defendant's dresser drawer in his bedroom and drug-use items were in plain view throughout the residence); State v. Scalf (Mar. 5, 1998), Cuyahoga App. No. 71910; State v. Soto (Jan. 22, 1998), Cuyahoga App. No. 72062;State v. Richardson (Nov. 13, 1997), Cuyahoga App. No. 71626.
 {¶ 26} Here, Matteson contends that the state failed to establish constructive possession because the state did not prove that the cocaine found in the purse belonged to her and not Sengkeophainh. First, we note that even if Sengkeophainh possessed the cocaine, that would not preclude a finding that Matteson jointly possessed the cocaine with him.
 {¶ 27} Next, we agree that evidence that Matteson was present when the cocaine was found or evidence that Matteson owned or occupied the premises where the cocaine was found does not, standing alone, constitute evidence that she constructively possessed the cocaine. However, here the state presented evidence of both. Additionally, the state presented circumstantial evidence that the cocaine was found in an area where only Matteson was likely to have access: inside a woman's purse found in the bottom dresser drawer in the master bedroom of Matteson's home. Moreover, the evidence showed that drugs and drug paraphernalia were spread throughout Matteson's residence, and that they were in plain view on the kitchen table.
 {¶ 28} Viewing this evidence in a light most favorable to the prosecution, we find that a rational trier of fact could have found that the state proved the essential elements of possession beyond a reasonable doubt. Specifically, any rational trier of fact could have found that Matteson knew that the cocaine was in her home and that she exercised dominion and control over it. Accordingly, we overrule Matteson's first assignment of error.
 III. {¶ 29} In her second assignment of error, Matteson contends that her conviction is contrary to the manifest weight of the evidence. Matteson suggests that the weight of the evidence shows that the cocaine belonged to Sengkeophainh.
 {¶ 30} Even when sufficient evidence supports a verdict, we may conclude that the verdict is against the manifest weight of the evidence, because the test under the manifest weight standard is much broader than that for sufficiency of the evidence. State v. Banks
(1992), 78 Ohio App.3d 206, 214; State v. Martin (1983),20 Ohio App.3d 172, 175. In determining whether a criminal conviction is against the manifest weight of the evidence, we must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial granted. State v. Garrow (1995), 103 Ohio App.3d 368,370-71; Martin at 175.
 {¶ 31} "A reviewing court will not reverse a conviction where there is substantial evidence upon which the court could reasonably conclude that all the elements of an offense have been proven beyond a reasonable doubt." State v. Eskridge (1988), 38 Ohio St.3d 56, paragraph two of the syllabus. Whether the evidence supporting a defendant's conviction is direct or circumstantial does not bear on our determination. "Circumstantial evidence and direct evidence inherently possess the same probative value and therefore should be subjected to the same standard of proof." Jenks, 61 Ohio St.3d 259 at paragraph one of the syllabus.
 {¶ 32} Matteson contends that her possession of cocaine conviction is contrary to the manifest weight of the evidence because the evidence indicates that Sengkeophainh possessed a large amount of cocaine in her home. However, as we noted above, more than one person may constructively possess an item. Mann, supra.
 {¶ 33} The record contains circumstantial evidence that Matteson knew about the cocaine and exercised dominion and control over it. Specifically, the circumstantial evidence indicates that an officer found cocaine in a purse located in a dresser inside the bedroom that Matteson used. The record contains evidence that drugs and drug paraphernalia were in plain view in the common area of Matteson's home. Additionally, the record contains no evidence that the other individuals in Matteson's home entered her bedroom prior to the search. Finally, while Matteson's mother testified on Matteson's behalf, she admitted on cross-examination that she provided Sengkeophainh with a job and a place to live after Matteson's arrest. As the state notes, these actions seem inconsistent with the theory that Sengkeophainh let Matteson take the fall for his illegal acts.
 {¶ 34} We find that this constitutes substantial evidence upon which the jury could reasonably conclude that the state proved the element of possession beyond a reasonable doubt. Thus, after reviewing the entire record, we cannot say that the jury lost its way or created a manifest miscarriage of justice when it found Matteson guilty of possession of more than twenty-five grams of cocaine. Accordingly, we overrule Matteson's second assignment of error.
 {¶ 35} In conclusion, we find that the record contains sufficient evidence to sustain Matteson's conviction and that her conviction is not contrary to the manifest weight of the evidence. Accordingly, we overrule Matteson's assignments of error and affirm the judgment of the trial court.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Vinton County Court of Common Pleas to carry this judgment into execution.
If a stay of execution of sentence and release upon bail has been previously granted by the trial court or this court, it is continued for a period of sixty days upon the bail previously posted. The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of proceedings in that court. The stay as herein continued will terminate in any event at the expiration of the sixty day period.
The stay shall terminate earlier if the appellant fails to file a notice of appeal with the Ohio Supreme Court in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to expiration of said sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Abele, J. and McFarland, J.: Concur in Judgment and Opinion.
 NOTICE TO COUNSEL
Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.