[Cite as *State v. Blevins*, 2011-Ohio-3367.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
SCIOTO COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | Case No. 10CA3353 |
| | : | |
| Plaintiff-Appellee, | : | |
| | : | DECISION AND |
| v. | : | JUDGMENT ENTRY |
| | : | |
| ALONZO BLEVINS, | : | |
| | : | **RELEASED 04/18/11** |
| | | |
| Defendant-Appellant. | : | |

_____

APPEARANCES:

Gene Meadows, Portsmouth, Ohio, for appellant.

Mark E. Kuhn, SCIOTO COUNTY PROSECUTOR, and Julie Cooke Hutchinson, SCIOTO COUNTY ASSISTANT PROSECUTOR, Portsmouth, Ohio, for appellee.

_____

Harsha, P.J.

{¶1}   Alonzo Blevins was one of four back seat passengers in a vehicle stopped by law enforcement for a cracked windshield.  The driver, front seat passenger, and Blevins had outstanding warrants.  Upon their arrest, a search of the vehicle resulted in the discovery of a trace amount of methamphetamine and numerous materials that could be used to make the drug.  Based upon this incident, a jury found Blevins guilty of possession of chemicals for the manufacture of methamphetamine and possession of methamphetamine.

{¶2}   In this appeal, Blevins contends that his conviction for possession of methamphetamine was against the manifest weight of the evidence.  We agree.  Law enforcement only found a trace amount of the drug on a piece of a plastic baggie located on the front passenger seat after that passenger exited the vehicle.  No

evidence supports a finding that Blevins would have been conscious of this object from his position in the vehicle, let alone that it contained a trace amount of a controlled substance.  Moreover, aside from Blevins' proximity to the plastic, there is no evidence that he could exercise dominion or control over it, i.e. that he had constructive possession of it.  Accordingly, we reverse Blevins' possession of methamphetamine conviction.

{¶3}    In addition, Blevins contends that his conviction for the possession of chemicals charge was against the manifest weight of the evidence.  However, the State presented evidence from which the jury could conclude that Blevins had constructive possession of ether (in starting fluid), lithium (in batteries), and pseudoephedrine, i.e. chemicals that may be used to manufacture methamphetamine, with the intent to manufacture the drug.  And because the jury could reasonably return a guilty verdict based on the State's version of the events, we cannot say that the jury clearly lost its way and created a manifest miscarriage of justice.  Thus, we reject that argument.

{¶4}    Next, Blevins contends that trial counsel rendered ineffective assistance by failing to make a Crim.R. 29(A) motion for acquittal on the possession of chemicals charge, i.e. counsel failed to challenge the sufficiency of the evidence supporting the conviction.  However, the failure to raise a sufficiency argument at trial does not waive that argument on appeal.  Moreover, in concluding that Blevins' conviction for this charge was not against the manifest weight of the evidence, we necessarily concluded that sufficient evidence supported the conviction.  Thus such a motion would have been futile and Blevins cannot establish a deficient performance or prejudice.

{¶5}    Finally, Blevins contends that the trial court erred by admitting unfairly

prejudicial evidence. The court permitted an Ohio State Highway Patrol lieutenant to testify that sometime in August 2009 (the month following the traffic stop) Blevins told him that he was a "small time meth dealer user" while lodging a complaint about a trooper's behavior after a separate traffic stop. However, the court did not abuse its discretion in concluding that the statement was probative of guilt as Blevins' status as a drug dealer and user supports the State's theory that he was not merely an innocent occupant of a vehicle laden with materials used to manufacture methamphetamine. Moreover, we find that the probative value of this testimony was not substantially outweighed by the danger of unfair prejudice. Therefore, we also reject this argument.

I. Facts

{¶6} The Scioto County grand jury indicted Blevins on: 1.) one count of possession of chemicals for the manufacture of methamphetamine, in violation of R.C. 2925.041(A), a third-degree felony; and 2.) one count of possession of methamphetamine, in violation of R.C. 2925.11(A) and (C)(1)(a), a fifth-degree felony. After Blevins pleaded not guilty to the charges, the matter proceeded to a jury trial, which produced the following evidence.

{¶7} On July 3, 2009 at approximately 9:00 p.m., Deputy David Fairchild and Detective Matt Spencer with the Scioto County Sheriff's Office and Trooper Nick Lewis with the Ohio State Highway Patrol were patrolling U.S. 23 in Scioto County when they observed a vehicle with a cracked windshield. Fairchild initiated a traffic stop, and Spencer and Lewis assisted him. The vehicle contained six occupants. The driver, Jason Craft, and the front seat passenger, Jillian Newman, had outstanding warrants for their arrest. Craft's father owned the vehicle but was not present. The following people

were seated in the back seat from left (i.e. behind the driver's seat) to right:  Blevins, Beth Vest, Anthony Blevins ("Anthony"), and Billy Stapleton.  Blevins also had an outstanding warrant out for his arrest.  Law enforcement arrested Craft, Newman, and Blevins based on the warrants.

{¶8}    Law enforcement found the following items in the passenger compartment of the vehicle:  one can of Preston starting fluid, four cans of Johnson starting fluid, crushed pseudoephedrine, uncrushed tablets containing pseudoephedrine, two four-packs of lithium batteries, two rolls of black electrical tape, one siphon pump, three copper fittings, and an empty box of CVS cold medicine (pseudoephedrine).  They found the uncrushed tablets between the driver's seat and center console and the crushed pseudoephedrine "very well hidden" stuffed under the center console.  They found the tape, batteries, and one can of Johnson starting fluid in a Walmart bag on the floor behind the driver's seat.  In addition, they found the empty CVS box on the "passenger rear floorboard" and "underneath some stuff."  The copper fittings were on the floor behind the driver's seat.  The siphon pump was found in a Big Lots bag, presumably in the back seat of the vehicle.

{¶9}    Spencer and Detective Adam Giles of the Scioto County Sheriff's Office explained the role the items found in the vehicle play in the production of methamphetamine.  Giles testified that pseudoephedrine is a "precursor chemical" found in common cold medicines, and it or ephedrine is needed to produce methamphetamine.  Giles also testified that a solvent, like starting fluid is added to the crushed up cold pills to draw out the pseudoephedrine and lithium or sodium metal is also added to the mixture later.  Spencer testified that the ether in starting fluid is a key

ingredient in the manufacturing process. In addition, Giles testified that a siphon pump could be used in two steps of the manufacturing process – to either help extract the pseudoephedrine or to create a gas generator needed later in the process. Spencer testified that electrical tape is used to hold the siphon hose in place and that copper fittings can be used to seal off anhydrous tanks used in the manufacturing process.

{¶10} A CVS receipt in the vehicle showed a purchase of a CVS brand decongestant, i.e. a pseudoephedrine purchase, at 7:49 p.m. that day. CVS records revealed that Stapleton made that purchase. And Spencer testified that through his investigation, he learned that Anthony was with Stapleton at the time. Walmart records revealed that Craft, Stapleton, and Newman purchased drugs containing pseudoephedrine that day. Newman made her purchase at 7:54 p.m., Craft made his purchase at 7:57 p.m., and Stapleton made his purchase at 8:10 p.m. A Walmart receipt found in the vehicle revealed a cash purchase of various items at 8:15 p.m., including one can of starting fluid, batteries, two rolls of tape, and one container of tic tacs. According to Spencer, Blevins and Vest (his girlfriend) were depicted on Walmart surveillance footage of this transaction, and Vest appeared to pay for the items. Lisa Payton, a Walmart Asset Protection Coordinator, testified that the Universal Product Code for the starting fluid matched the code on the can of Preston starting fluid found in the vehicle. Spencer also testified that the Big Lots receipt from the vehicle indicated someone purchased a siphon pump at 8:47 p.m. To Spencer's knowledge Blevins did not make that purchase or go into Big Lots.

{¶11} Blevins had tic tacs and two syringes on his person when law enforcement arrested him. One syringe was still in a package, but the other had been opened and

loaded with a substance.  The Sheriff's Office did not test the substance.  Instead, it destroyed the syringes according to an office policy.

{¶12}  Spencer and Lewis testified that when they instructed Newman to exit the vehicle, she kept her legs together as she did so.  Lewis testified that her actions made him believe she was trying to conceal something between her legs, and after she stood, he saw the corner of a clear plastic baggie on the seat, i.e. Newman had been sitting on it.  Lewis testified that people who possess drugs commonly put their stash into a baggie, filter the drugs into one corner of the bag, cut that corner off, and twist the open part of the corner to secure the drugs inside.  He testified that this particular "corner piece" contained white residue.  Michelle Anderson, a forensic scientist for the Ohio Bureau of Criminal Identification and Investigations identified the residue as a trace amount of methamphetamine.

{¶13}  Lieutenant Edward Crispen, the post commander at the Ohio State Highway Patrol's Portsmouth post testified that sometime in August 2009, Blevins came to the post to complain about Lewis' conduct during a different traffic stop. Blevins was angry and complained that Lewis violated his constitutional rights on multiple occasions. According to Crispen, Blevins felt he was "getting stopped more than he should have been stopped."  In addition, Blevins told Crispen that he was "just a small time meth dealer user," and Lewis should focus on more serious criminals.  Crispen advised Blevins that what he was doing was still illegal.  Blevins said, "I realize that but it[']s still small time stuff."

{¶14}  The jury found Blevins guilty on both counts of the indictment.  After sentencing, Blevins filed this appeal.

## II.  Assignments of Error

**{¶15}**  Blevins assigns three errors for our review:

The Defendant-Appellant was denied effective assistance of counsel in violation of the Sixth and Fourteenth Amendments of the United States Constitution as a result of Trial Counsel's failure to move for a Criminal Rule 29 motion of acquittal at the close of the Plaintiff-Appellee's case in chief.

The trial court abused its discretion and erred to the prejudice of the Defendant-Appellant by allowing prejudicial testimony in violation of Evid.R. 403(A).

The verdict and conviction is against the manifest weight of the evidence presented at trial.

For ease of analysis, we will address these assignments of error out of order.

## III.  Manifest Weight of the Evidence

**{¶16}**  In his third assignment of error, Blevins contends that his convictions were against the manifest weight of the evidence.  "In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed."  *State v. Brown*, Athens App. No. 09CA3, 2009-Ohio-5390, at ¶24, citing *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541.  A reviewing court "may not reverse a conviction when there is substantial evidence upon which the trial court could reasonably conclude that all elements of the offense have been proven beyond a reasonable doubt."  *State v. Johnson* (1991), 58 Ohio St.3d 40, 42, 567 N.E.2d 266, citing *State v. Eskridge* (1988), 38 Ohio St.3d 56, 526 N.E.2d 304, at paragraph two of the syllabus.

{¶17}  Even in acting as a thirteenth juror we must still remember that the weight to be given evidence and the credibility to be afforded testimony are issues to be determined by the trier of fact.  *State v. Frazier*, 73 Ohio St.3d 323, 339, 1995-Ohio-235, 652 N.E.2d 1000, citing *State v. Grant*, 67 Ohio St.3d 465, 477, 1993-Ohio-171, 620 N.E.2d 50.  The fact finder "is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony."  *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (per curiam).  Thus, we will only interfere if the fact finder clearly lost its way and created a manifest miscarriage of justice.  Moreover, "[t]o reverse a judgment of a trial court on the weight of the evidence, when the judgment results from a trial by jury, a unanimous concurrence of all three judges on the court of appeals panel reviewing the case is required."  *Thompkins*, supra, at paragraph four of the syllabus, construing and applying Section 3(B)(3), Article IV of the Ohio Constitution.

### A.  Possession of Drugs

{¶18}  The jury found Blevins guilty of possession of drugs, i.e. methamphetamine, in violation of R.C. 2925.11(A), which states:  "No person shall knowingly obtain, possess, or use a controlled substance."  Blevins contends that the evidence does not support his conviction.  We agree.

{¶19}  Possession may be actual or constructive.  "Actual possession exists when the circumstances indicate that an individual has or had an item within his immediate physical possession.  Constructive possession exists when an individual is able to exercise dominion or control of an item, even if the individual does not have the item within his immediate physical possession."  *State v. Fry*, Jackson App. No.

03CA26, 2004-Ohio-5747, at ¶39, citing *State v. Hankerson* (1982), 70 Ohio St.2d 87, 434 N.E.2d 1362, at syllabus and *State v. Wolery* (1976), 46 Ohio St.2d 316, 329, 348 N.E.2d 351. For constructive possession to exist, "[i]t must also be shown that the person was conscious of the presence of the object." *Hankerson* at 91. "Dominion and control, as well as whether a person was conscious of the presence of an item of contraband, may be established by circumstantial evidence." *State v. Matteson*, Vinton App. No. 06CA642, 2006-Ohio-6827, at ¶23, citing *State v. Jenks* (1991), 61 Ohio St.3d 259, 272-273, 574 N.E.2d 492.

{¶20} A defendant's mere proximity to contraband is in itself insufficient to establish constructive possession, but proximity to contraband may constitute some evidence of constructive possession. *Fry* at ¶40. Therefore, presence in the vicinity of contraband, coupled with another factor or factors probative of dominion or control over the contraband, may establish constructive possession. *State v. Riggs* (Sept. 13, 1999), Washington App. No. 98CA39, 1999 WL 727952, at *5. Moreover, two or more persons may have joint constructive possession of the same object. Id. at *4.

{¶21} Although Blevins had a loaded syringe on his person at the time of his arrest, the Sheriff's Office destroyed the syringe without testing it, and none of the State's witnesses testified about any characteristics of the substance that could lead the jury to conclude it constituted methamphetamine. The "corner piece" law enforcement found on the front passenger seat contained the only controlled substance seized during the traffic stop. However, Blevins did not have actual possession of the piece, and the evidence does not support a finding that he had constructive possession of it. The piece only had trace amounts of methamphetamine on it and was small enough

that Newman made an effort to conceal it between her legs when she exited the vehicle. Moreover, law enforcement did not see the piece on the seat until after Newman stood up, i.e. she successfully concealed it from view until forced to exit the vehicle. No evidence supports a finding that Blevins would have been conscious of the presence of the corner piece from his position behind the driver, let alone that the piece contained trace amounts of a controlled substance. Likewise, no evidence supports a finding that Blevins had dominion or control over the piece aside from his proximity to it. And because no evidence supports a finding that Blevins knowingly obtained, possessed, or used a controlled substance, we find that his conviction for possession of methamphetamine was against the manifest weight of the evidence. We reverse Blevins' conviction for possession of methamphetamine and remand so that the trial court can discharge Blevins on this charge.

B. Possession of Chemicals for the Manufacture of Methamphetamine

**{¶22}** The jury also found Blevins guilty of possession of chemicals for the manufacture of a controlled substance, i.e. methamphetamine, in violation of R.C. 2925.041(A), which states: "No person shall knowingly assemble or possess one or more chemicals that may be used to manufacture a controlled substance in schedule I or II with the intent to manufacture a controlled substance in schedule I or II in violation of section 2925.04 of the Revised Code." Methamphetamine is a Schedule II controlled substance. R.C. 3719.41, Schedule II(C)(2).

**{¶23}** Blevins apparently concedes that the chemicals found in the vehicle – pseudoephedrine, ether in the starting fluid, and lithium in the batteries – may be used to manufacture methamphetamine. He focuses instead, on the argument that the State

failed to put forth evidence that he possessed these chemicals or did so with the intent to manufacture methamphetamine.  We disagree.

**{¶24}**  The State presented evidence from which a jury could conclude that Blevins possessed chemicals used in the manufacture of methamphetamine with intent to make the drug.  Although he did not pay for the starting fluid and batteries, Blevins was present when Vest paid for the items at Walmart, had actual possession of one other item from this transaction during his arrest (tic tacs), and had the starting fluid and batteries sitting on the floor by him in the backseat.  Blevins also sat within reach of the crushed and uncrushed pseudoephedrine in the vehicle and within reach of non-chemical items that play a role in the manufacture of methamphetamine, such as the electrical tape and copper fittings.

**{¶25}**  The State's evidence of the timeline of events suggests that Blevins participated in a carefully orchestrated plan with the other occupants of the vehicle to acquire these items to make methamphetamine and to avoid suspicion by dividing up the purchases.[1]  Between 7:49 p.m. and 8:10 p.m., three of the vehicle occupants purchased medicine containing pseudoephedrine and a fourth occupant was present during at least one of those purchases.  Three of the four purchases were made at Walmart between 7:54 p.m. and 8:10 p.m.  Blevins and Vest went through the checkout line at the same Walmart store at 8:15 p.m. to purchase the starting fluid, batteries, and tape.  The jury could infer that once the Walmart purchases (which occurred within

---

[1] The State argues that Blevins is guilty of complicity to possession of methamphetamine and complicity to possession of chemicals for the manufacture of methamphetamine even if he is not the principal offender of those crimes.  However, the jury was not instructed on the elements of complicity at trial, see R.C. 2923.03, nor did the jury find Blevins guilty of complicity.  Therefore, we do not address this argument.

minutes of each other) were finished at 8:15 p.m., the group of six converged at Craft's

father's vehicle, went to Big Lots so someone could make the 8:47 p.m. siphon pump

purchase, and was stopped minutes later by law enforcement.

**{¶26}** The evidence reasonably supports the conclusion that Blevins had

constructive possession of chemicals used in the manufacture of methamphetamine –

lithium (in the batteries), ether (in the starting fluid), and pseudoephedrine – and that he

intended to manufacture methamphetamine along with the other vehicle occupants.

The jury chose to believe the State's version of events, and we will not substitute our

judgment for that of the jury under these circumstances. After reviewing the entire

record, we cannot say that the jury lost its way or created a manifest miscarriage of

justice when it found Blevins guilty of possession of chemicals for the manufacture of a

controlled substance.

IV. Ineffective Assistance of Counsel

**{¶27}** In his first assignment of error, Blevins contends that trial counsel

rendered ineffective assistance. To prevail on an ineffective assistance of counsel

claim, an appellant must show that: 1.) his counsel's performance was deficient and, 2.)

the deficient performance prejudiced his defense so as to deprive him of a fair trial.

*State v. Drummond*, 111 Ohio St.3d 14, 2006-Ohio-5084, 854 N.E.2d 1038, at ¶205,

citing *Strickland v. Washington* (1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d

674. To establish deficient performance, an appellant must show that trial counsel's

performance fell below an objective level of reasonable representation. *State v.*

*Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, at ¶95. To establish

prejudice, an appellant must show a reasonable probability exists that, but for the

alleged errors, the result of the proceeding would have been different.  Id.  The appellant has the burden of proof on the issue of counsel's ineffectiveness because a properly licensed attorney is presumed competent.  *State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, 860 N.E.2d 77, at ¶62.

**{¶28}**  Blevins contends that trial counsel rendered ineffective assistance by not moving for a Crim.R. 29(A) motion for acquittal on the possession of chemicals for the manufacture of methamphetamine charge.[2]  A Crim.R. 29(A) motion for acquittal tests the sufficiency of the evidence presented at trial.  *State v. Umphries*, Ross App. No. 02CA2662, 2003-Ohio-599, at ¶6, citing *State v. Williams*, 74 Ohio St.3d 569, 576, 1996-Ohio-91, 660 N.E.2d 724 and *State v. Miley* (1996), 114 Ohio App.3d 738, 742, 684 N.E.2d 102.  The trial court must enter a judgment of acquittal when the state's evidence is insufficient as a matter of law to sustain a conviction.  Crim.R. 29(A).

**{¶29}**  However, the failure to raise a sufficiency argument at trial does not waive that argument on appeal.  *State v. Cooper*, 170 Ohio App.3d 418, 2007-Ohio-1186, 867 N.E.2d 493, at ¶13.  Moreover, "[w]hen an appellate court concludes that the weight of the evidence supports a defendant's conviction, this conclusion necessarily includes a finding that sufficient evidence supports the conviction."  *State v. Puckett*, Ross App. No. 10CA3153, 2010-Ohio-6597, at ¶34, citing *State v. Pollitt*, Scioto App. No. 08CA3263, 2010-Ohio-2556, at ¶14.  "Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency."  Id., quoting *State v. Lombardi*, Summit App. No. 22435, 2005-Ohio-4942, at ¶9, in turn, quoting *State v. Roberts* (Sept. 17, 1997), Lorain App. No. 96CA006462, 1997 WL 600669.

---

[2] Blevins does not raise a similar claim for the possession of methamphetamine charge.

**{¶30}** In resolving Blevins' third assignment of error, we already determined that his conviction for possession of chemicals for the manufacture of methamphetamine was not against the manifest weight of the evidence. Therefore, a Crim.R. 29(A) motion would have been futile. Because the law does not require counsel to take a futile act, the failure to make the Crim.R. 29(A) motion was not deficient. We overrule Blevins' first assignment of error.

## V.  Prejudicial Testimony

**{¶31}** In his second assignment of error, Blevins contends that the trial court erred under Evid.R. 403(A) when it permitted Crispen to testify about a statement Blevins allegedly made to him. Blevins complains that Crispen testified that he told Crispen that he "cooked meth." However, from our review of the transcript, Crispen actually testified that Blevins stated that he was "a small time meth dealer user." Evid.R. 403(A) prohibits the introduction of relevant evidence if its "probative value is substantially outweighed by the danger of unfair prejudice * * *." Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401. "The admission or exclusion of relevant evidence rests within the sound discretion of the trial court[.]" *State v. Haines*, 112 Ohio St.3d 393, 2006-Ohio-6711, 860 N.E.2d 91, at ¶50. Absent an abuse of that discretion, an appellate court will not disturb a trial court's ruling on the admissibility of evidence. *State v. Martin* (1985), 19 Ohio St.3d 122, 129, 483 N.E.2d 1157 (per curiam). The term "abuse of discretion" implies that the court's attitude was unreasonable, arbitrary, or unconscionable. *State v. Adams* (1980), 62 Ohio St.2d 151, 157, 404 N.E.2d 144.

**{¶32}** Blevins contends that the probative value of Crispen's testimony was substantially outweighed by the danger of unfair prejudice. However, "[o]nly in rare cases are an accused's own actions or language unfairly prejudicial." *State v. Lee*, Franklin App. No. 06AP226, 2007-Ohio-1594, at ¶7, citing *State v. Bailey*, Franklin App. No. 04AP-553, 2005-Ohio-4068, at ¶11. Clearly Blevins' alleged statement was relevant to establishing his guilt. Blevins' status as a user and dealer of methamphetamine would make it more probable that he understood the ingredients and process for the manufacture of the drug and in fact intended to manufacture the drug to both sell and use it.

**{¶33}** Blevins primarily complains that his alleged statement was "prejudicial" because Crispen's testimony lacked credibility. Specifically, he complains that Crispen could not recall exactly when Blevins made the statement and did not follow up on the statement even though Blevins had presumably admitted to being a criminal. Blevins also complains that the statement was not explicitly related to the traffic stop in this case. However, Crispen's testimony was not inherently unreliable. The jury was capable of determining what weight, if any, Blevins' alleged statement deserved in light of the other evidence in the case. Admission of the testimony, harmful as it may have been to Blevins' case, was not unfairly prejudicial and was not a violation of Evid.R. 403(A). We overrule Blevins' second assignment of error.

VI. Conclusion

**{¶34}** In summary, we overrule Blevins' first and second assignments of error. We sustain Blevins' third assignment of error in part and overrule it in part. We reverse his conviction for possession of methamphetamine and remand so that the trial court

can discharge Blevins on that charge.

JUDGMENT AFFIRMED IN PART,
REVERSED IN PART,
AND CAUSE REMANDED.

## JUDGMENT ENTRY

It is ordered that the JUDGMENT IS AFFIRMED IN PART AND REVERSED IN PART, and that the CAUSE IS REMANDED.  Appellant and Appellee shall split the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Scioto County Common Pleas Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted.  The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court.  If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio.  Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.  Exceptions.

Abele, J. & Kline, J.:  Concur in Judgment and Opinion.


For the Court


BY: _____
          William H. Harsha, Presiding Judge




**NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**