[Cite as *State v. Hargrave*, 2012-Ohio-798.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ADAMS COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | : | |
| Plaintiff-Appellee, | : | Case No. 11CA907 |
| | : | |
| vs. | : | **Released: February 22, 2012** |
| | : | |
| THOMAS HARGRAVE, | : | DECISION AND JUDGMENT |
| | : | ENTRY |
| Defendant-Appellant. | : | |

APPEARANCES:

Timothy Young, Ohio Public Defender, Jeremy J. Masters, Assistant State Public Defender, Office of the Ohio Public Defender, Columbus, Ohio, for Appellant.

C. David Kelley, Adams County Prosecutor, and Kris D. Blanton, Adams County Assistant Prosecutor, West Union, Ohio, for Appellee.

McFarland, J.:

{¶1} Appellant Thomas Hargrave appeals his conviction in the Adams County Court of Common Pleas after a jury found him guilty of two counts of murder. Appellant raises two assignments of error, arguing 1) his conviction was against the manifest weight of the evidence, and 2) the trial court abused its discretion when it found he had the ability to pay restitution. Having reviewed the record, we overrule Hargrave's two assignments of error and affirm the trial court's judgment.

FACTS

{¶2} On March 21, 2010, Hargrave killed his grandfather, Franklin Holland. Hargrave was unemployed and lived with his grandparents. He had been using methamphetamine for approximately two to three months prior, and on that day had ingested a large quantity thereof.

{¶3} Hargrave's recollection of events was extremely limited. He had gone out to the garage and his grandfather was there. Hargrave had no recollection why he went to the garage or what his grandfather was doing there. According to Hargrave, he began having an anxiety attack. His grandfather, however, threatened to call the police and took a shotgun from of its case, and then loaded a shell into it.

{¶4} Hargrave, fearing he was going to be shot, began stabbing his grandfather. He could not recall whether he had come to the garage armed with the knife, or whether it was already in the garage. Once Hargrave began stabbing his grandfather, "I just a blurred." (Tr. at 452.) Hargrave then recalled his grandfather falling to his knees and he stopped stabbing him.

{¶5} At that point, Hargrave recalled his grandmother entering the garage. Hargrave, believing she had concealed a steak knife within the sleeve of her nightgown, punched her. Hargrave did not notice his grandmother leave the residence and go to a neighbor's house to call 911. When the police arrived,

Hargrave confronted them and asked that they shoot him. Luckily, law enforcement recognized he was under the influence of a narcotic and used their tasers to subdue him.

{¶6} After his arrest, Hargrave spoke with law enforcement officers about his recollection of the events. Again, he could not recall many details of his grandfather's death clearly, nor could he make sense of the situation. By Hargrave's own admission, his recollection of events did not coincide with reality.

{¶7} Hargrave's grandfather had suffered numerous injuries. Hargrave had stabbed him at least 28 times, and other lacerations indicated his grandfather was in a defensive posture. Contrary to Hargrave's statement that he stopped stabbing his grandfather when he fell down, there were stab wounds to the victim's back. Specifically, there were seven stab wounds in a circular pattern. These wounds pierced the victim's spleen and heart, nearly severed the aorta, and were so forceful they fractured ribs. There were also 21 other punctures, one of which completely severed the victim's jugular vein.

{¶8} Hargrave proceeded to trial and the jury convicted him of two counts of murder. Prior to sentencing, Hargrave fired his attorney and requested a new one. The trial court obliged and scheduled a second sentencing hearing. At the second sentencing hearing, Hargrave fired his new attorney and elected to proceed pro se, with counsel remaining in an advisory capacity. Hargrave offered no mitigating

evidence or arguments, choosing instead to lament the unfairness of the trial, his treatment while in jail, and his trial counsel's deficient performance.

{¶9} The trial court explicitly considered the presentence investigation that indicated Hargrave had been previously employed as a millwright for 18 to 20 years, but was unemployed at the time of the offenses. The trial court merged the two offenses and sentenced Hargrave to 15 years to life in prison and ordered him to pay $4,000 restitution to his grandmother for funeral expenses. Hargrave did not object to the restitution and now appeals.

## ASSIGNMENTS OF ERROR

I.      "The trial court violated [Appellant's] rights to due process and a fair trial when it entered a judgment of conviction for murder, when the jury's determination that [Appellant] had not acted in self-defense was against the manifest weight of the evidence."

II.      "The trial court abused its discretion when it found that [Appellant] has the present and future ability to pay four-thousand dollars in restitution."

## I. Self-defense

{¶10} In his first assignment of error, Appellant argues the jury's finding he did not prove self-defense was against the manifest weight of the evidence. We disagree.

## A. Standard of Review

{¶11} "In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the

evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed." *State v. Brown,* 4th Dist. No. 09CA3, 2009-Ohio-5390, at ¶ 24, citing *State v. Thompkins* (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541. A reviewing court "may not reverse a conviction when there is substantial evidence upon which the [trier of fact] could reasonably conclude that all elements of the offense have been proven beyond a reasonable doubt." *State v. Johnson* (1991), 58 Ohio St.3d 40, 42, 567 N.E.2d 266, citing *State v. Eskridge* (1988), 38 Ohio St.3d 56, 526 N.E.2d 304, at paragraph two of the syllabus.

{¶12} We must still remember that the weight to be given evidence and the credibility to be afforded testimony are issues to be determined by the trier of fact. *State v. Frazier* (1995), 73 Ohio St.3d 323, 339, 652 N.E.2d 1000, citing *State v. Grant* (1993), 67 Ohio St.3d 465, 477, 620 N.E.2d 50. The trier of fact "is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 461 N.E.2d 1273. "Moreover, '[t]o reverse a judgment of a trial court on the weight of the evidence, when the judgment results from a trial by jury, a unanimous concurrence of all three judges on the court of appeals panel reviewing the case is

required.'" *State v. Blevins*, 4th Dist. No. 10CA3353, 2011-Ohio-3367, at ¶ 17, quoting *Thompkins,* supra, at paragraph four of the syllabus (construing and applying Section 3(B)(3), Article IV Ohio Constitution).

### B. Legal Analysis

{¶13} R.C. 2903.02(A) provides, "[n]o person shall purposely cause the death of another * * *."  R.C. 2903.02(B) provides, "[n]o person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree and that is not a violation of section 2903.03 or 2903.04 of the Revised Code." Whoever violates either section is guilty of murder.

{¶14} However, even if the state had proven the elements of murder, Hargrave could not be convicted if he had demonstrated he acted in self-defense. "Self-defense is an affirmative defense that requires a defendant to prove three elements by a preponderance of the evidence: '(1) the defendant was not at fault in creating the violent situation, (2) the defendant had a bona fide belief that she was in imminent danger of death or great bodily harm and that her only means of escape was the use of force, and (3) that the defendant did not violate any duty to retreat or avoid the danger.'" *State v. Goff*, 128 Ohio St.3d 169, 2010-Ohio-6317, 942 N.E.2d 1075, at ¶ 36, quoting *State v. Thomas* (1997), 77 Ohio St.3d 323, 326, 673 N.E.2d 1339 and citing R.C. 2901.05.  "[T]he second element of self-defense

is a combined subjective and objective test." *State v. Thomas* (1997), 77 Ohio St.3d 323, 330, 673 N.E.2d 1339. The person's belief must be objectively reasonable under the circumstances and he must subjectively believe he needed to resort to force to defend himself. *Thomas* at 330-331.

{¶15} Additionally, "[a] defendant is privileged to use only that force that is reasonably necessary to repel the attack." *State v. Hendrickson*, 4th Dist. No. 08CA12, 2009-Ohio-4416, at ¶ 23, citing *State v. Williford* (1990), 49 Ohio St.3d 247, 249, 551 N.E.2d 1279, citing *State v. McLeod* (1948), 82 Ohio App. 155, 157, 80 N.E.2d 699. That is, a person cannot continue to use force against the original aggressor once the imminent danger of death or serious bodily injury dissipates; the defender cannot become the aggressor.

{¶16} Finally, "[t]he elements of self-defense are cumulative, and if defendant fails to prove *any one* of the elements by a preponderance of the evidence, he fails to demonstrate that he acted in self-defense." (Emphasis in original.) *Hendrickson* at ¶ 23, citing *State v. Cassano,* 96 Ohio St.3d 94, 2002-Ohio-3751, 772 N.E.2d 81, ¶ 72, citing *State v. Jackson* (1986), 22 Ohio St.3d 281, 284, 490 N.E.2d 893.

{¶17} Here, Hargrave admitted he killed his grandfather and does not argue the state failed to prove the elements of murder. Rather, he argues he had proven

self-defense by a preponderance of the evidence and the jury lost its way when it did not acquit him.  The evidence, however, speaks to the contrary.

{¶18} First, Hargrave presented scant evidence surrounding the stabbing. He relied almost entirely on the statements he gave to law enforcement.  Hargrave could not explain how or why he was in the garage with his grandfather.  He could not recall whether the knife he used was already in the garage or if he had brought it into the garage with him.  He stated, "it's a little fuzzy, the details and all that." (Tr. at 469.)  Though Hargrave recalled his grandfather threatening to call the police and loading a shell into a shotgun, he offered no explanation as to why his grandfather did this.  Without more, it is unclear whether Hargrave was at fault in creating the violent situation, assuming the jury believed Hargrave's disjointed account of the incident.

{¶19} Second, the evidence demonstrated Hargrave was the aggressor and was not entitled to the privilege of self-defense.  Hargrave's grandfather was 75 years old, had suffered a previous heart attack, and had undergone a triple-bypass. Hargrave stabbed him at least 28 times.  Over 25% of the wounds were to his grandfather's backside, and there were defensive wounds.  When confronted with this evidence and told he was the aggressor, Hargrave responded, "I think I did, I'm just thing, I must have just totally flipped out.  Had a complete meltdown, someway, somehow.  Something went terribly wrong in my mind for me to do

something like this." (Tr. at 535.) The physical evidence and this statement negate Hargrave's previous statements that he was merely defending himself and prevent him from using the aegis of self-defense.

{¶20} Overall, Hargrave's conviction was not against the manifest weight of the evidence. There was substantial evidence upon which the jury could have reasonably concluded the state proved the elements of murder beyond a reasonable doubt. Hargrave failed to present sufficient evidence on all of the elements of self-defense; thus, his conviction was proper. Accordingly, we overrule Hargrave's first assignment of error.

## II. Restitution

{¶21} In his second assignment of error, Appellant argues the trial court erred when it found he had the ability to satisfy restitution of $4,000. Specifically, Appellant argues the trial court improperly considered his future prison income. We disagree.

## A. Standard of Review

{¶22} Preliminarily, Appellant did not object to the restitution order. A defendant who fails to object to the amount of restitution forfeits all but plain error. *State v. Johnson*, 4th Dist. No. 03CA11, 2004-Ohio-2236, at ¶ 8-9. See, also, *State v. Moss*, 186 Ohio App.3d 787, 2010-Ohio-1135, 930 N.E.2d 838, at ¶ 9. "[T]here are 'three limitations on a reviewing court's decision to correct [a forfeited error].

First, there must be an error, *i.e.,* a deviation from a legal rule. * * * Second, the error must be plain. To be 'plain' within the meaning of Crim.R. 52(B), an error must be an 'obvious' defect in the trial proceedings. * * * Third, the error must have affected 'substantial rights.' [The Supreme Court of Ohio has] interpreted this aspect of the rule to mean that the trial court's error must have affected the outcome of the trial." *State v. Lynn*, 129 Ohio St.3d 146, 2011-Ohio-2722, 950 N.E.2d 931, at ¶ 13, quoting *State v. Barnes*, 94 Ohio St.3d 21, 27, 2002-Ohio-68, 759 N.E.2d 1240. Regarding the third limitation, "reversal is warranted only when the outcome of the trial clearly would have been different without the error." *State v. Beebe*, 4th Dist. No. 10CA2, 2011-Ohio-681, at ¶10, citing *State v. Long* (1978), 53 Ohio St.2d 91, 372 N.E.2d 804, at paragraph two of the syllabus.

{¶23} Yet "[e]ven when all three prongs are satisfied, a court still has discretion whether or not to correct the error." *Lynn* at ¶ 14, citing *State v. Noling,* 98 Ohio St.3d 44, 2002-Ohio-7044, 781 N.E.2d 88, at ¶ 62. Courts are "to notice plain error 'with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.'" Id. at ¶ 14, quoting *Barnes* at 27, quoting *Long* at paragraph three of the syllabus.

### B. Legal Analysis

{¶24} "'Before ordering an offender to pay restitution, R.C. 2929.19(B)(6) requires a court to consider the offender's present and future ability to pay the

amount of the sanction or fine. When, however, a trial court imposes a financial sanction without any inquiry into the offender's present and future means to pay, the failure to make the requisite inquiry constitutes an abuse of discretion. * * * [A] court complies with Ohio law if the record shows that the court considered a [pre-sentence investigation report] that provides all pertinent financial information regarding an offender's ability to pay restitution.'" *Moss* at ¶ 13, quoting *State v. Bryant,* 4th Dist. No. 08CA3258, 2009-Ohio-5295, at ¶ 7.

{¶25} Here, the trial court did consider Hargrave's present and future ability to pay restitution. On the record, the court stated, "[t]he court specifically finds in the imposition of the financial sanctions that the defendant does have the past, present, and future income ability and/or potential to satisfy the financial sanctions as imposed." (Sentencing Tr. at 34.) The trial court noted Hargrave's previous employment as a millwright and the court calculated Hargrave would earn approximately $204 annually while incarcerated, perhaps more. (Id.)

{¶26} With a minimum term of incarceration of 15 years and one year of jail-time credit, Hargrave would earn approximately $2,856 if only incarcerated for the minimum. Hargrave would be able to satisfy over 71% of the restitution this way. This does not include amounts Hargrave could earn once released from prison.

{¶27} Nothing restricts a trial court to imposing only an amount of restitution an offender can *definitely* pay in a specific period of time. Nor has Appellant cited to any law precluding a trial court from considering an offender's future prison income when determining his present and future ability to pay a financial sanction.

{¶28} The trial court's decision to impose restitution of $4,000 was not unreasonable, arbitrary, or unconscionable. The trial court specifically considered Appellant's past work history and technical skills, as well as his imminent incarceration and anticipated income. The trial court considered the appropriate factors and made an extremely clear record when it did so. As such, the trial court did not abuse its discretion; there was no error, and certainly no plain error concerning restitution. Accordingly, we overrule Appellant's second assignment of error.

**JUDGMENT AFFIRMED**.

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE AFFIRMED and that the Appellee recover of Appellant costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Adams County Common Pleas Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Exceptions.

Harsha, J. and Kline, J.: Concur in Judgment and Opinion.

For the Court,

BY: _____
Matthew W. McFarland, Judge

**NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**