[Cite as *State v. Bundy*, 2012-Ohio-3934.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
PIKE COUNTY

STATE OF OHIO,                              :

    Plaintiff-Appellee,                 :        Case No.   11CA818

    vs.                                          :

ERIC LAPAUL BUNDY,                       :        DECISION AND JUDGMENT ENTRY


    Defendant-Appellant.              :

_____

APPEARANCES:

COUNSEL FOR APPELLANT:        Timothy Young, Ohio Public Defender, and Sarah G.
LoPresti, Ohio Assistant Public Defender, 250 East Broad
Street, Suite 1400, Columbus, Ohio 43215

COUNSEL FOR APPELLEE:          Robert Junk, Pike County Prosecuting Attorney, 100 East 2nd
Street, Waverly, Ohio 45690
_____
CRIMINAL CASE FROM COMMON PLEAS COURT
DATE JOURNALIZED: 8-20-12
ABELE, P.J.

{¶ 1}   This is an appeal from a Pike County Common Pleas Court judgment of conviction

and sentence.   The jury found Eric L. Bundy, defendant below and appellee herein, guilty of (1)

reckless homicide, in violation of R.C. 2905.041, along with an R.C. 2941.141 firearm specification

and an R.C. 2941.145 specification that appellant used a firearm to facilitate the offense;[1] (2)

---

[1]   The indictment did not contain the R.C. 2941.145 specification that appellant used a firearm to facilitate the offense.
Instead, the indictment contained an R.C. 2941.146 specification that appellant committed the offense that includes, as an
essential element, purposely or knowingly causing or attempting to cause the death of or physical harm to another and that was
committed by discharging a firearm from a motor vehicle other than a manufactured home.     Pencil lines were drawn through
the R.C. 2941.146 specification.     The state, however, did not seek to amend this specification.     Nothing else appears in the
record on appeal to indicate that the R.C. 2941.146 specification was amended to an R.C. 2941.145 specification.     Because no
one has raised this issue on appeal, we do not address it.     We simply note the discrepancy between the jury's verdict and the

improperly handling a firearm in a motor vehicle, in violation of R.C. 2923.16(B); and (3) receiving

stolen property, in violation of R.C. 2913.51(A).

{¶ 2}   Appellant assigns the following errors for review:

FIRST ASSIGNMENT OF ERROR:

"THE TRIAL COURT VIOLATED MR. BUNDY'S RIGHTS TO
DUE PROCESS AND A FAIR TRIAL BY ENTERING JUDGMENT
OF CONVICTION FOR RECKLESS HOMICIDE, WHEN THE
JURY'S DETERMINATION THAT MR. BUNDY HAD NOT
ACTED IN SELF-DEFENSE WAS NOT SUPPORTED BY
SUFFICIENT EVIDENCE AND WAS AGAINST THE MANIFEST
WEIGHT OF THE EVIDENCE."

SECOND ASSIGNMENT OF ERROR:

"THE TRIAL COURT ABUSED ITS DISCRETION AND
DEPRIVED ERIC BUNDY OF HIS RIGHT TO DUE PROCESS
UNDER THE FOURTEENTH AMENDMENT TO THE UNITED
STATES CONSTITUTION AND SECTION 16, ARTICLE I OF THE
OHIO CONSTITUTION WHEN IT INSTRUCTED THE JURY
THAT THE STATE MAY REBUT THE PRESUMPTION OF
SELF-DEFENSE BY DEMONSTRATING THAT THE
DEFENDANT DID NOT MEET THE THREE ELEMENTS OF THE
AFFIRMATIVE DEFENSE OF SELF-DEFENSE."

{¶ 3}   Appellant's conviction stems from an unfortunate sequence of events that culminated

in the fatal shooting of Richard "Pig" Harris.   In April 2010, appellant had been living with Pig's

{¶ 4}   brother, Brandon Harris, a reputed drug dealer.   Appellant claimed to be Brandon's

"bodyguard."   On April 19, 2010, appellant became angry with Brandon for leaving him home

without money.   Appellant then decided to steal Brandon's gun, along with some cocaine and

---

indictment.

Percocet.    Appellant intended to sell the items in order to obtain money.

{¶ 5}    When Brandon returned home, he and Pig discovered the missing gun and drugs. They suspected appellant had stolen them and decided to find appellant to retrieve the items.

{¶ 6}    In the meantime, appellant contacted Shawn Fyffe, another reputed drug dealer, to ask for assistance to sell the items.   The Harris brothers also had contacted Fyffe to ask about appellant's whereabouts.   After Fyffe advised the Harris brothers that he had just spoken with appellant, the Harris brothers requested Fyffe to arrange a meeting with appellant without letting appellant know about the Harris brothers involvement.   Fyffe agreed.   Fyffe and appellant decided to rendevous at an abandoned parking lot.

{¶ 7}    Appellant and his brother, Charles "Chucky" Bundy, arrived at the designated location and remained in their vehicle.   When Fyffe and the Harris brothers (along with Brandon's girlfriend, Lauren Smith) arrived, the Harris brothers immediately exited the vehicle and ran to the Bundy vehicle.   At that point, the sequence of the events is disputed.   It is undisputed, however, that appellant shot a gun that resulted in Pig's death.

{¶ 8}    Each of the five witnesses to the shooting had a different account.   Appellant claimed that Brandon punched out the passenger side window with the butt of a gun and that Brandon and Pig were dragging him out of the vehicle.   He stated that he told Chucky to "go go go," as he fired the gun in the air.   He claimed that the shooting was an accident.

{¶ 9}    Chucky stated that two or three guys jumped out of the Harris vehicle.   He claimed that one of them jumped on the top of the car, pointed a gun at appellant, and stated, "your [sic] fucken [sic] dead."   Chucky stated that "they" busted the window and then starting hitting appellant and trying to pull him out of the vehicle.   Chucky claimed that he put the car in reverse

and "took off." He stated that he was unaware appellant had discharged the gun.

{¶ 10} Brandon admitted that he punched out the window, but disputed appellant's claim that he did so with a gun. Brandon stated that he used his hand to punch through the window. Brandon claimed that appellant fired the gun and shot Pig at the same time that he started to punch out the window. Brandon further disputed appellant's claim that he and Pig were trying to pull him out of the vehicle. Brandon stated that he and Pig were standing next to each other on the passenger side, where appellant was seated.

{¶ 11} Lauren Smith, Brandon's girlfriend, stated that Brandon and Pig exited the car and went to the passenger side of the Bundy vehicle. She explained that "as Brandon hit the window, I seen [sic] a gunshot go off in the passenger side."

{¶ 12} Shawn Fyffe stated that Pig and Brandon jumped out of the vehicle. He saw Brandon proceed to the driver's side and Pig to passenger side. He stated that both Brandon and Pig were punching the window. He saw a window shatter and then heard the gunshot.

{¶ 13} A Pike County Grand Jury returned an indictment that charged appellant with: (1) murder, in violation of R.C. 2903.02(A), along with an R.C. 2941.141 firearm specification and an R.C. 2941.146 specification that appellant committed a felony that includes, as an essential element, purposely or knowingly causing or attempting to cause the death of or physical harm to another and that was committed by discharging a firearm from a motor vehicle other than a manufactured home; (2) improperly handling firearms in a motor vehicle, in violation of R.C. 2923.16(B)[2]; and (3) receiving stolen property, in violation of R.C. 2913.51(A).

---

[2] This count of the indictment also contains a firearm specification. Lines, however, have been drawn across it. Appellant moved to dismiss this firearm specification, and on October 25, 2010, the court granted the motion.

{¶ 14} At trial, appellant asserted that pursuant to R.C. 2901.05(B) (the "castle doctrine"), he presumptively acted in self-defense. Appellant claimed that he was entitled to the self-defense presumption because Brandon and Pig were in the process of unlawfully entering the vehicle that he occupied at the time he shot Pig. Appellant asserted that Brandon's action of breaking the window and Brandon's and Pig's actions of attempting to drag him from the vehicle demonstrated that they were in the process of unlawfully entering the vehicle.

{¶ 15} The state, however, disputed appellant's argument that he was entitled to the R.C. 2901.05(B) self-defense presumption. To support its theory that appellant was not entitled to the self-defense presumption, the state noted that the coroner, Dr. Gretel C. Stephens,[3] testified that the bullet that killed Pig entered his body in the left pectoral region and traveled through his body from right to left. She stated that the bullet perforated his lungs, heart and pulmonary artery and that the wound was "fairly quickly fatal." The state suggested that her testimony shows that appellant knew how to shoot to kill, that he intended to do so when he shot Pig, and that the shooting was not an "accident," as appellant claimed.

{¶ 16} On cross-examination, appellant's counsel asked Dr. Stephens whether the bullet trajectory was "consistent with [the victim] leaning towards the muzzle of the gun at the time that it fired." Dr. Stephens stated that it was consistent with that scenario. Counsel additionally questioned whether she found any glass fragments on the bullet. She stated that she did not. Appellant suggested that this testimony indicated that Pig was leaning toward the vehicle at the

---

[3] The transcript spells Dr. Stephens' name as "Mona Gretal Stevens." Dr. Stephens explained that her full name is "Mona Gretal Case Harlan Stevens." In her autopsy report, she writes her name as "Gretel C. Stephens." We have used what we presume to be her common name and its correct spelling, as stated in her written report.

time appellant discharged the weapon and that appellant fired the gun after Brandon had punched out the window.

{¶ 17} The state further relied upon the eyewitness accounts that appellant discharged the gun at approximately the same time that Brandon was striking the window.   The state argued that this evidence showed that appellant fired the weapon before anyone attempted to enter the vehicle that he occupied, and thus, this evidence defeated his claim of presumptive self-defense under R.C. 2901.05(B).   The state additionally asserted that even if the evidence showed that Brandon's fist had entered, or was in the process of entering, the vehicle, the evidence did not support appellant's claim that Pig had entered, or was in the process of entering, the vehicle.   The state contended that because the victim, Pig, was not in the process of entering the vehicle, the self-defense presumption did not apply.

{¶ 18} At the close of all the evidence, appellant moved for a judgment of acquittal regarding the murder count.   He argued that the evidence demonstrated that he presumptively acted in self-defense under R.C. 2901.05(B).   Appellant asserted that the presumption applied because (1) he was lawfully in the vehicle, (2) he was not at fault, and (3) Brandon tried to unlawfully enter the vehicle.   The court denied appellant's motion.

{¶ 19} During closing argument, the state did not dispute that Brandon punched the window.   The state did, however, observe that the evidence conflicted as to whether appellant discharged the gun before, during, or after the time that Brandon punched out the window. Moreover, the state asserted that appellant was not entitled to the self-defense presumption because the evidence failed to show that the victim, Pig, was in the process of unlawfully entering the vehicle when appellant shot him.   The state observed that Brandon punched the window, "[b]ut

[appellant] didn't shoot Brandon." The state argued that according to Brandon and Lauren, Pig was not reaching into the vehicle when appellant shot him.

{¶ 20} Appellant's counsel asserted that the evidence demonstrated that Brandon and Pig jointly attacked the vehicle in which appellant was a lawful passenger, broke the window and then tried to drag appellant out of the vehicle.[4] He contended that these facts show that appellant presumptively acted in self-defense under R.C. 2901.05(B). Counsel pointed to the coroner's testimony that the angle of Pig's gunshot wound suggested that he was leaning forward in an attempt to "go after" appellant at the time he was shot. Counsel further argued that the coroner's testimony shows that the gunshot did not travel through the glass window before entering Pig's body, which would refute Brandon's claim that appellant shot the gun at the same time as Brandon's fist contacted the window. Appellant additionally asserted that the state's witnesses were not credible. He noted that neither Brandon nor Fyffe told the law enforcement officers a consistent story when interviewed. Brandon changed his story at least twice, and Fyffe changed his three times. Counsel contended that Lauren was not credible because she claimed to be ignorant of Brandon's involvement with drugs, yet she had been dating him for approximately four years and had a child with him.

{¶ 21} Before the trial court instructed the jury, appellant requested the following jury instruction:

"The defendant is presumed to have acted in self defense when using

---

[4] We observe that appellant's assertion that the Harris brothers acted jointly raises the specter of the doctrine of transferred intent self-defense. State v. Howard, 4th Dist. No. 07CA2948, 2007-Ohio-6331, ¶¶30-33; Katz, Ohio Criminal Law, Section 88:6. Appellant, however, did not raise this particular argument. We express no opinion as to its applicability to this case or the merits of the doctrine.

defensive force that was intended or likely to cause death or great bodily harm to another if the person against whom the defensive force was used was in the process of entering or had entered unlawfully and without privilege to do so, the vehicle occupied by the defendant.

The state claims the presumption that the defendant acted in self defense when using defensive force that was intended or likely to cause death or great bodily harm to another does not apply.   This presumption does not apply if the state proves by the greater weight of the evidence that: A) either the person against whom the defensive force was used had a right to be in the vehicle; or, B) the defendant used the defensive force while in a   vehicle and he was unlawfully, and without privilege to be in that vehicle."

The trial court did not use appellant's requested instruction, but instead instructed the jury:

"The Defendant is presumed to have acted in self-defense when using defensive force that was intended or likely to cause death or great bodily harm to another if the person against whom the defensive force was used was in the process of entering or had entered unlawfully and without privilege to do so, the vehicle occupied by the Defendant. * * * * The State claims the presumption that the Defendant acted in self-defense when using defensive force that was intended or likely to cause death or great bodily harm to another does not apply. * * * * The presumption does not apply if the State proves by the greater weight of the evidence that either the person against whom the defensive force was used had a right to be in the vehicle or the Defendant used the defensive force while in a vehicle and he was unlawfully and without privilege to be in that vehicle.   This presumption is a rebuttable presumption. * * * * If the rebuttable presumption applies, then the State bears the burden of proof by a preponderance of the evidence to prove the Defendant did not act in self-defense by proving by the greater weight of the evidence that the Defendant was at fault in creating the situation giving rise to the death of [the victim]. * * * * Only a Defendant who was not at fault in creating the situation giving rise to the affray may resort to the use of force.   The not-at-fault requirement means that the Defendant must not have been the first aggressor in the incident.   The not-at-fault requirement does not require a showing that the Defendant played no part in criminal activity.   Involvement in criminal activity does not preclude raising self-defense.   The not-at-fault requirement requires the Defendant to show that he was not at fault in creating the situation that gave rise to the death, that is that the Defendant had not engaged in such wrongful conduct toward the assailant that the assailant was provoked to attack the Defendant.   If the rebuttable presumption does not apply, then in order to establish the defense of self-defense, the Defendant bears the burden of proof by a preponderance of the evidence to establish that the Defendant was not at fault in creating the situation giving rise to the death of [the victim] * * *; and if the rebuttable presumption does not apply, then in order to establish the defense of self-defense, the Defendant bears

the burden of proof by a preponderance of the evidence to establish that the Defendant had reasonable grounds to believe, and an honest belief, even if mistaken, that he was in immediate danger of death or great bodily harm, and that his only reasonable means of escape from such danger was by the use of deadly force; and if the rebuttable presumption does not apply, then in order to establish the defense of self-defense, the Defendant bears the burden by a preponderance of the evidence to establish that the Defendant had not violated any duty to retreat to avoid the danger.   If the rebuttable presumption does not apply, the Defendant had a duty to retreat if he was at fault in creating the situation giving rise to the death of [the victim], or did not have reasonable grounds to believe, and an honest belief, that he was in immediate or imminent danger of death or great bodily harm or that he had a reasonable means of escape from that danger other than by the use of deadly force. The Defendant no longer had a duty to retreat if he retreated, escaped, or withdrew from the situation, or reasonably indicated his intention to retreat, escape or withdraw from the situation and no longer participate in it; and he then had reasonable grounds to believe, and an honest belief, that he was in immediate or imminent danger of death or great bodily harm; and the only reasonable means of escape from that danger was by the use of deadly force, even though he was mistaken as to the existence of that danger.   A person who lawfully * * * is an occupant in his vehicle or who lawfully is an occupant in a vehicle owned by his immediate family member has no duty to retreat before using self-defense. * * * * If the rebuttable presumption applies, and if the weight of the evidence of self-defense is equally balanced, or if you are unable to determine which side has adduced the preponderance of the evidence on the issue of self-defense, then the State has not rebutted the presumption that [the] Defendant * * * acted in self-defense, and you must find [the defendant] not guilty of Murder and not guilty of Reckless Homicide."

{¶ 22} After instructing the jury, the trial court asked whether either party had any objections.   Defense counsel stated: "We would just ask to preserve our initial filing that we've made requesting * * * McClellan Instruction in 427."

{¶ 23} On October 28, 2010, the jury (1) found appellant not guilty of murder, but guilty of the lesser included offense of reckless homicide, in violation of R.C. 2903.041; (2) found that appellant committed the offense with a firearm on or about his person or under his control and that he used the firearm to facilitate the commission of the offense; (3) found appellant guilty of improperly handling firearms in a motor vehicle, in violation of R.C. 2923.16(B); and (4) found

appellant guilty of receiving stolen property, in violation of R.C. 2913.51(A).   This appeal

followed.

I

{¶ 24}   In his first assignment of error, appellant asserts that sufficient evidence does not

support his reckless homicide conviction and that his conviction is against the manifest weight of

the evidence.   In particular, appellant contends that the evidence shows that he presumptively

acted in self-defense and "[a]s such, no rational trier of fact could have found all the essential

elements of reckless homicide beyond a reasonable doubt."   Appellant thus asserts that the trial

court should have determined that the state failed to present sufficient evidence to sustain his

conviction.

{¶ 25}   Appellant additionally argues that the jury's reckless homicide conviction is against

the manifest weight of the evidence when the greater weight of the evidence shows that he

presumptively acted in self-defense.   Appellant contends that the manifest weight of the evidence

shows that Pig (1) was in the process of unlawfully and without privilege to do so entering, or had

unlawfully and without privilege entered, the vehicle that appellant occupied, (2) Pig did not have a

right to be in the vehicle and (3) appellant was not in the vehicle unlawfully.   Appellant more

specifically argues that Pig

> "engaged in a course of conduct in which Pig drove his car up to [appellant]'s, got
> out of the car and ran up to [appellant]'s window.   Moreover, the autopsy
> suggested that [Pig] was leaning forward toward the gun when it was fired.   And
> although Brandon Harris was the one who punched through the car window, he
> testified that [Pig] was standing directly next to him, so close that their arms were
> touching.   Pig had made explicit threats against [appellant], and he participated in
> the attack equally with his brother.   The record displays abundant evidence that
> [Pig] was in the process of entering [appellant]'s car."

{¶ 26} Appellant further asserts that the state failed to rebut the self-defense presumption. He claims that the state may rebut the presumption only if one of the two circumstances set forth in R.C. 2901.05(B)(2) applies: (1) that Pig had a right to be in the vehicle; or (2) that appellant used defensive force while in the vehicle unlawfully. Appellant asserts that the record contains absolutely no evidence that either of these two circumstances applied and, therefore, that the state failed to rebut the self-defense presumption.

{¶ 27} Appellant next argues that even if the R.C. 2901.05(B) self-defense presumption does not apply, his conviction is nevertheless against the manifest weight of the evidence. He asserts that the manifest weight of the evidence shows that he acted in self-defense because (1) he was not at fault in creating the situation, (2) appellant had a reasonable belief that he was in imminent danger, and (3) he did not violate a duty to retreat.

{¶ 28} The state asserts that the jury's determination that the R.C. 2901.05(B) self-defense presumption is inapplicable is not against the manifest weight of the evidence. The state observes that conflicting evidence exists as to whether Pig was in the process of unlawfully entering the vehicle. It contends that the jury obviously rejected appellant's interpretation of the evidence–that Pig was attempting to unlawfully enter the vehicle.

A

STANDARD OF REVIEW

{¶ 29} Initially, we observe that within his first assignment of error, appellant uses both the sufficiency-of-the-evidence and manifest-weight-of-the evidence standards of review. The two standards, however, represent legally distinct concepts. State v. Elmore, 111 Ohio St.3d 515,

2006-Ohio-6207, 857 N.E.2d 547, ¶44; State v. Puckett, 191 Ohio App.3d 747, 2010-Ohio-6597,

947 N.E.2d 730, ¶29.

1

Sufficiency of the Evidence

{¶ 30} A claim of insufficient evidence invokes a due process concern and raises the

question whether the evidence is legally sufficient to support the verdict as a matter of law.   State

v. Diar, 120 Ohio St.3d 460, 2008-Ohio-6266, 900 N.E.2d 565, 113, citing   State v. Thompkins,

78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).   In reviewing such a challenge, "[t]he relevant

inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any

rational trier of fact could have found the essential elements of the crime proven beyond a

reasonable doubt."   State v. Jenks, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of

the syllabus, following Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

{¶ 31} The sufficiency-of-the-evidence standard is inapplicable when a defendant raises an

affirmative defense as justification for the crime.   See State v. Hancock, 108 Ohio St.3d 57,

2006-Ohio-160, 840 N.E.2d 1032, ¶38, quoting Jackson, 443 U.S. at 324 (stating that the

sufficiency of the evidence standard "'must be applied with explicit reference to the substantive

elements of the criminal offense'"); State v. Wilson, 8th Dist. No. 97350, 2012-Ohio-1952, ¶¶35

and 39.   Whether a defendant established an affirmative defense does not relate to whether the

state presented sufficient evidence to support the essential elements of the crime charged, but

instead, it seeks to relieve the defendant of criminal responsibility.   Wilson at ¶39, quoting State v.

Dykas, 185 Ohio App.3d 763, 2010-Ohio-359, 925 N.E.2d 685, ¶18 (stating that "'a defendant

claiming self-defense does not seek to negate an element of the offense charged but rather seeks to

relieve himself from culpability'"). As the <u>Hancock</u> court explained, the

sufficiency-of-the-evidence standard "'does not implicate affirmative defenses [such as

self-defense], because proof supportive of an affirmative defense cannot detract from proof beyond

a reasonable doubt that the accused had committed the requisite elements of the crime.'" <u>Hancock</u>

at ¶37, quoting <u>Caldwell v. Russell</u>, 181 F.3d 731, 740 (C.A.6, 1999).

{¶ 32} In the case at bar, appellant does not dispute whether the state presented sufficient

evidence regarding the essential elements of reckless homicide. Rather, he disputes whether the

jury should have rejected a reckless homicide conviction when he presented evidence of

presumptive self-defense, an affirmative defense. Because this argument does not challenge the

sufficiency of the state's evidence to establish the elements of reckless homicide, we find it

inappropriate in the sufficiency-of-the evidence context. We do, however, find it cognizable

under a manifest-weight-of-the evidence standard.

2

Manifest Weight of the Evidence

{¶ 33} When an appellate court considers a claim that a conviction is against the manifest

weight of the evidence, the court must dutifully examine the entire record, weigh the evidence, and

consider the credibility of witnesses. <u>Thompkins</u>, 78 Ohio St.3d at 387. <u>Accord</u> <u>State v. Hunter</u>,

131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶119. A reviewing court must bear in

mind, however, that credibility generally is an issue for the trier of fact to resolve. See <u>State v.</u>

Issa, 93 Ohio St.3d 49, 67, 752 N.E.2d 904 (2001); State v. DeHass, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus.   "'Because the trier of fact sees and hears the witnesses and is particularly competent to decide "whether, and to what extent, to credit the testimony of particular witnesses," we must afford substantial deference to its determinations of credibility.'"   Barberton v. Jenney, 126 Ohio St.3d 5, 2010-Ohio-2420, 929 N.E.2d 1047, ¶20, quoting State v. Konya, 2nd Dist. No. 21434, 2006-Ohio-6312,¶6, quoting State v. Lawson, 2nd Dist. No. 16288 (Aug. 22, 1997).   Thus, we leave the issues of weight and credibility of the evidence to the fact finder, as long as there is a rational basis in the record for its decision.   State v. Picklesimer, 4th Dist. No. 11CA9, 2012-Ohio-1282, ¶24.   Accord State v. Howard, 4th Dist. No. 07CA2948, 2007-Ohio-6331, ¶16 ("We will not intercede as long as the trier of fact has some factual and rational basis for its determination of credibility and weight.").

{¶ 34} Once the reviewing court finishes its examination, the court may reverse the judgment of conviction only if it appears that the fact-finder, when resolving the conflicts in evidence, "'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'"   Thompkins, 78 Ohio St.3d at 387, quoting State v. Martin, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1983).   If the prosecution presented substantial evidence upon which the trier of fact reasonably could conclude, beyond a reasonable doubt, that the essential elements of the offense had been established, the judgment of conviction is not against the manifest weight of the evidence.   E.g., State v. Eley, 56 Ohio St.2d 169, 383 N.E.2d 132 (1978), syllabus.   Thus, "'"[w]hen conflicting evidence is presented at trial, a conviction is not against the manifest weight of the evidence simply because the jury believed the prosecution testimony."'"   State v. Cooper, 170 Ohio App.3d 418, 2007-Ohio-1186, 867 N.E.2d

493, ¶17, quoting <u>State v. Mason</u>, 9th Dist. No. 21397, 2003-Ohio-5787, ¶17, quoting <u>State v. Gilliam</u>, 9th Dist. No. 97CA6757 (Aug. 12, 1998).   Instead, a reviewing court should find a conviction against the manifest weight of the evidence only in the "'exceptional case in which the evidence weighs heavily against the conviction.'"   <u>Thompkins</u>, 78 Ohio St.3d at 387, quoting <u>Martin</u>, 20 Ohio App.3d at 175.   <u>Accord</u> <u>State v. Lindsey</u>, 87 Ohio St.3d 479, 483, 721 N.E.2d 995 (2000).

B

RECKLESS HOMICIDE

{¶ 35}  R.C. 2903.041 sets forth the essential elements of reckless homicide: "No person shall recklessly cause the death of another * * *."

{¶ 36}  Appellant does not dispute the quantity or quality of the state's evidence regarding the elements necessary to establish the reckless homicide charge.   Instead, he asserts that his reckless homicide conviction is against the manifest weight of the evidence because the greater weight of the evidence shows that he presumptively acted in self-defense under R.C. 2901.05(B). Appellant contends that a reasonable factfinder only could conclude that the Harris brothers were in the process of unlawfully entering the vehicle that he occupied at the time he shot Pig.   As such, he argues that the jury should have found that he acted in self-defense under R.C. 2901.05(B), the "castle doctrine."

C

SELF-DEFENSE

{¶ 37}  "Self-defense is an affirmative defense that, if proved, relieves a defendant of criminal liability for the force that the defendant used."   <u>State v. Kozlosky</u>, 195 Ohio App.3d 343,

2011-Ohio-4814, 959 N.E.2d 1097, ¶22.  "'The burden of going forward with the evidence of an affirmative defense, and the burden of proof, by a preponderance of the evidence, for an affirmative defense, is upon the accused.'"  State v. Nucklos, 121 Ohio St.3d 332, 2009-Ohio-792, 904 N.E.2d 512, ¶7, quoting R.C. 2901.05(A).

{¶ 38}  To establish self-defense, the defendant bears the burden to prove, by a preponderance of the evidence, that "'(1) the defendant was not at fault in creating the violent situation, (2) the defendant had a bona fide belief that she was in imminent danger of death or great bodily harm and that her only means of escape was the use of force, and (3) that the defendant did not violate any duty to retreat or avoid the danger.'"  State v. Goff, 128 Ohio St.3d 169, 2010-Ohio-6317, 942 N.E.2d 1075, ¶36, quoting  State v. Thomas, 77 Ohio St.3d 323, 326, 673 N.E.2d 1339 (1997). The "elements of self-defense are cumulative. * * * [Thus, i]f the defendant fails to prove any one of these elements by a preponderance of the evidence he has failed to demonstrate that he acted in self-defense."  State v. Jackson, 22 Ohio St.3d 281, 284, 490 N.E.2d 893 (1986) (emphasis sic).  Accord State v. Cassano, 96 Ohio St.3d 94, 2002–Ohio–3751, 772 N.E.2d 81, ¶73; State v. Hargrave, 4th Dist. No. 11CA907, 2012-Ohio-798, ¶16.

{¶ 39}  R.C. 2901.05(B)(1), however, relieves the defendant's burden to prove the foregoing three elements.  Under R.C. 2901.05(B), a defendant is rebuttably presumed to have acted in self-defense

> "when using defensive force that is intended or likely to cause death or great bodily harm to another if the person against whom the defensive force is used is in the process of unlawfully and without privilege to do so entering, or has unlawfully and without privilege to do so entered, the residence or vehicle occupied by the person using the defensive force."

This rebuttable presumption means that the defendant no longer carries the initial burden to

produce evidence that (1) the defendant was not at fault in creating the violent situation, (2) the defendant had a bona fide belief that she was in imminent danger of death or great bodily harm and that her only means of escape was the use of force, and (3) that the defendant did not violate any duty to retreat or avoid the danger.   Instead, the rebuttable presumption, by definition, presumes the existence of these facts.

{¶ 40} For the presumption to apply, a defendant must establish that (1) the person against whom the defendant used defensive force was in the process of unlawfully entering, or had unlawfully entered, the residence or vehicle that the defendant occupied, (2) the defendant was in the vehicle lawfully, and (3) the victim did not have a right to be in the vehicle.   If the presumption applies, the state may rebut it.   R.C. 2901.05(B)(3); State v. Wilson, 8th Dist. No. 97350, 2012-Ohio-1952, ¶43 (construing complementary statute, R.C. 2901.09(B), the no-duty-to-retreat statute); State v. Petrone, 5th Dist. No. 2011CA67, 2012-Ohio-911, ¶73 (recognizing that state may rebut presumption by showing that defendant at fault and did not have bona fide belief that defendant in imminent danger and that only means of escape was use of force).

1

The Jury Rationally Rejected
the Self-defense Presumption

{¶ 41} In the case sub judice, appellant argues that the greater weight of the evidence shows that (1) he was in the vehicle lawfully, (2) Pig did not have a right to be in the vehicle, and (3) Pig was in the process of entering the vehicle.   The state contends that conflicting evidence exists as to whether Pig was in the process of entering the vehicle and that the jury rationally

determined that the evidence supported a finding that Pig was not in the process of entering the vehicle.

{¶ 42} At trial, two witnesses testified about the altercation that Pig was not in the process of entering the vehicle when appellant shot him. Brandon stated that appellant discharged the gun at the same time that Brandon's fist hit the window. Lauren testified similarly. Brandon stated that Pig was standing next to him outside the vehicle and that neither one attempted to drag appellant out of the vehicle. Lauren also stated that she did not see Brandon or Pig attempt to drag appellant out of the vehicle. Brandon's and Lauren's version of the altercation conflicts with appellant's.

{¶ 43} Appellant claims that Brandon and Pig attempted to drag him out of the vehicle. He points to the coroner's testimony that the bullet trajectory was consistent with Pig leaning towards the vehicle and to her testimony that the bullet found in Pig's body did not contain glass fragments. Appellant argues that the coroner's testimony thus leads to the inferences that (1) Pig, by leaning towards the vehicle, must have been reaching in and attempting to drag him out, and (2) appellant did not shoot the weapon until after Brandon had broken the window. The jury, however, rationally could have discredited appellant's story and concluded that Brandon's and Lauren's version of the altercation was more credible than appellant's. Even if the jury believed that Pig was leaning forward, it did not necessarily have to believe that Pig was in the process of unlawfully entering the vehicle. Likewise, if the jury believed that Brandon broke the glass before appellant fired the weapon, it did not necessarily have to believe that Pig was in the process of unlawfully entering the vehicle. As the state observed, Brandon, not Pig, broke the window. Appellant did not shoot Brandon. Instead, he shot Pig.

{¶ 44} The jury also may have rejected appellant's version of the altercation because appellant was not credible. Appellant initially claimed that he shot Pig by "accident," yet the gunshot wound showed that appellant shot Pig "center mass" and that it was almost immediately fatal. The jury could have thus inferred that appellant did not tell the truth when he stated that he shot Pig by "accident." It then may have determined that the rest of his story was untruthful.

{¶ 45} In sum, we cannot state that the jury, in resolving the conflicting evidence, clearly lost its way when it determined that appellant was not entitled to the self-defense presumption. State v. Clellan, 10th Dist. No. 09AP-1043, 2010-Ohio-3841 (holding that defendant not entitled to self-defense presumption when evidence conflicted as to whether the victim was in the process of entering the vehicle); Petrone at ¶73 (concluding jury could have rejected self-defense presumption when conflicting evidence presented as to whether victim tried to enter defendant's vehicle). See State v. Miller, 12th Dist. No. CA2009–10–138, 2010–Ohio–3821 (stating that altercation occurring outside of one's vehicle, with no attempt by the victim to enter the defendant's vehicle, does not implicate the Castle Doctrine).

2
Even if the Presumption Applied, the Jury Could Have
Rationally Determined that the State Rebutted It

{¶ 46} In the case sub judice, the jury could have also determined that the presumption applied, but that the state rebutted the presumption by a preponderance of the evidence. Appellant argues that the jury could not have determined that the state rebutted the presumption because the state failed to offer any evidence that (1) Pig had a right to be in the vehicle, or (2) appellant was unlawfully in the vehicle. Appellant claims that the only way the state may rebut the presumption is by showing one of the two foregoing circumstances. Resolving this issue requires us to

interpret the statute.

a

Statutory interpretation

**{¶ 47}** The interpretation of a statute is a question of law that we review de novo.   In re

Adoption of B.M.W., 4th Dist. No. 10CA899, 2010–Ohio–5214, ¶13.

> "The primary goal of statutory construction is to ascertain and give effect to the legislature's intent in enacting the statute.   The court must first look to the plain language of the statute itself to determine the legislative intent.   We apply a statute as it is written when its meaning is unambiguous and definite.   An unambiguous statute must be applied in a manner consistent with the plain meaning of the statutory language."

State v. Lowe, 112 Ohio St.3d 507, 861 N.E.2d 512, 2007–Ohio–606, ¶9 (citations omitted).

**{¶ 48}** While courts must liberally construe criminal statutes in the accused's favor, R.C.

2901.04(A), "'courts do not have the authority to ignore the plain and unambiguous language of a

statute under the guise of either statutory interpretation or liberal construction; [instead], the court

must give effect to the words utilized.'" State v. Snowden, 87 Ohio St.3d 335, 336, 720 N.E.2d

909 (1999), quoting Morgan v. Ohio Adult Parole Auth., 68 Ohio St.3d 344, 347, 626 N.E.2d 939

(1994).   Accord Doe v. Marlington Loc. Sch. Dist. Bd. Of Educ., 122 Ohio St.3d 12,

2009-Ohio-1360, 907 N.E.2d 706, ¶29.   Thus, if the meaning of a statute is unambiguous and

definite, a court must apply it as written and no further interpretation is necessary.   Mathews v.

Waverly, 4th  Dist. No. 08CA787, 2010–Ohio–347, ¶23, citing State ex rel. Savarese v. Buckeye

Local School Dist. Bd. of Edn., 74 Ohio St.3d 543, 545, 660 N.E.2d 463 (1996).

**{¶ 49}** In the case at bar, we believe that the meaning of R.C. 2901.05(B) is plain and

unambiguous.

b

R.C. 2901.05(B)

R.C. 2901.05(B) states:

(1) Subject to division (B)(2) of this section, a person is presumed to have acted in self defense or defense of another when using defensive force that is intended or likely to cause death or great bodily harm to another if the person against whom the defensive force is used is in the process of unlawfully and without privilege to do so entering, or has unlawfully and without privilege to do so entered, the residence or vehicle occupied by the person using the defensive force.

(2)(a) The presumption set forth in division (B)(1) of this section does not apply if the person against whom the defensive force is used has a right to be in, or is a lawful resident of, the residence or vehicle.

(b) The presumption set forth in division (B)(1) of this section does not apply if the person who uses the defensive force uses it while in a residence or vehicle and the person is unlawfully, and without privilege to be, in that residence or vehicle.

(3) The presumption set forth in division (B)(1) of this section is a rebuttable

presumption and may be rebutted by a preponderance of the evidence.

{¶ 50} We believe that the statute plainly and unambiguously permits the state to rebut the self-defense presumption by means other than R.C. 2901.05(B)(2)(a) or (b). Contrary to appellant's argument, a plain reading of the statute does not suggest that the legislature intended R.C. 2901.05(B)(2) to be the only means by which the state may rebut the presumption. The plain language of the statute does not limit the state's ability to rebut the presumption. Instead, R.C. 2901.05(B)(2)(a) and (b) set forth the circumstances under which the presumption is wholly inapplicable.[5] Those subsections do not purport to limit the state's ability to rebut the

---

[5] While it is not our role to write the statute, we observe that at least two other states make the self-defense presumption inapplicable when the accused is engaged in criminal activity. Mich.Comp.Laws. 780.951 (stating that the self-defense presumption does not apply when the individual using deadly force or force other than deadly force is engaged in the commission of a crime or is using the * * * occupied vehicle to further the commission of a crime"); Ky.Rev.Stat. 503.055(1)(c) (stating that the presumption does not apply if "[t]he person who uses defensive force is engaged in an unlawful

presumption, but instead, they state when the presumption does not apply.   A different section, R.C. 2901.05(B)(3), states that the presumption is rebuttable, without delineating any particular means by which the state may rebut the presumption.   It also does not limit the state's ability to rebut the presumption to those circumstances set forth in R.C. 2901.05(B)(2)(a) or (b).   By not specifying the manner in which the state may rebut the presumption, we believe that the legislature intended to allow the state to rebut the presumption as it would rebut any other presumption–i.e., by presenting evidence that is countervailing to the presumed facts.   See, generally, In re Guardianship of Breece, 173 Ohio St. 542, 555-556, 184 N.E.2d 386 (1962) (discussing presumptions and effect of rebuttable presumptions).   If the legislature intended otherwise, it could have used express language to state that the state may rebut the presumption only if it shows one of the two R.C. 2901.05(B)(2) circumstances.   Thus, we disagree with appellant that the statute means that the state can rebut the presumption only by showing that one of the two circumstances set forth in R.C. 2901.05(B)(2) applies.

{¶ 51} Furthermore, the effect of the self-defense presumption is to negate the defendant's burden to produce evidence that he was not at fault, that he had a reasonable belief of imminent danger and that his only means of escape was the use of force, and that he did not violate a duty to retreat.   If a defendant establishes the self-defense presumption, then he need not present evidence regarding these three elements.   Instead, the presumption, by definition, presumes that the defendant was not at fault, that he had a reasonable belief of imminent danger and that the only

---

activity or is using the dwelling, residence, or occupied vehicle to further an unlawful activity").    This seems like a smart rule, as we hardly think the self-defense presumption is intended to allow, for example, rival drug dealers or gangs, to use this presumption as an excuse for the murder of their rivals.

means of escape was the use of force, and that he did not violate a duty to retreat. To rebut that presumption the logical conclusion is that the state would need to show that the defendant was at fault, that he did not have a reasonable belief of imminent danger, or that he violated a duty to retreat. See Wilson at ¶¶43-44 (discussing state's rebuttal evidence using three elements of common law self-defense, not R.C. 2901.05(B)(2)(a) and (b)); Petrone at ¶73 (same).

{¶ 52} Further support for our decision may be found in an Attorney General Publication, Ohio's Concealed Carry Laws and Application (Rev. Apr. 27, 2012), 21-22.[6] The publication states:

> "The law presumes you to have acted in self-defense or defense of another when using deadly force if the victim had unlawfully and without privilege entered or was in the process of entering the residence or vehicle you occupy. The presumption does not apply if the defendant was unlawfully in that residence or vehicle. The presumption does not apply if the victim had a right to be in, or was a lawful resident of, the residence or vehicle.
> The presumption of self-defense is a rebuttable presumption. The term 'rebuttable presumption' means the prosecutor, and not the defendant, carries the burden of producing evidence contrary to the facts that the law presumes. However, a rebuttable presumption does not relieve the defendant of the burden of proof. If the prosecutor provides sufficient evidence to prove that the defendant created the confrontation or that the use of deadly force was not reasonably necessary to prevent death or great bodily harm, then the presumption of self-defense no longer exists."

Thus, the Attorney General interprets the statute in the same way.[7] That is, R.C. 2901.05(B)(2)

---

[6] This publication is available at http://www.ohioattorneygeneral.gov/files/Publications/Publications-for-Law-Enforcement/Concealed-Carry-Publications/Concealed-Carry-Laws-Booklet.aspx.

[7] This does not suggest that we are bound by the Attorney General's interpretation. State ex rel. Data Trace Information Servs., LLC v. Cuyahoga Cty. Fiscal Officer, 131 Ohio St.3d 255, 2012-Ohio-753, 963 N.E.2d 1288, ¶57, quoting State ex rel. Van Dyke v. Pub. Emps. Retirement Bd., 99 Ohio St.3d 430, 2003-Ohio-4123, 793 N.E.2d 438, ¶40 ("'Attorney General opinions are not binding on courts; at best, they are persuasive authority.'").

states when the presumption does not apply.   It does not, however, limit the state's ability to rebut

the presumption.   R.C. 2901.05(B)(3) allows the state to use traditional means to rebut the

presumption.

{¶ 53}   Although appellant cites the pattern jury instructions to support his argument, those

instructions are not binding upon this court.   State v. Nucklos, 171 Ohio App.3d 38,

2007-Ohio-1025, 869 N.E.2d 674, ¶57 (stating that the Ohio jury instruction handbook is "a

respected and authoritative source of the law, but it is merely a product of the Ohio Judicial

Conference and not binding on the courts").   Moreover, we do not believe that the pattern jury

instructions regarding the self-defense presumption impose limits on the state's ability to rebut that

presumption.   The pattern instructions read:

> "2.   Presumption–Described.   The defendant is presumed to have acted in
> (self defense) (defense of another) when using defensive force that was (intended)
> (likely) to cause death or great bodily harm to another if the person against whom
> the defendant force was used (was in the process of entering) (had entered),
> unlawfully and without privilege to do so, the (residence) (vehicle) occupied by the
> defendant.
> 3.   Presumption–Rebuttable.   The state claims the presumption that the
> defendant acted in (self defense) (defense of another) when using defensive force
> that was (intended) (likely) to cause death or great bodily harm to another does not
> apply.   This presumption does not apply if the state proves by the greater weight of
> the evidence that
> (A) the person against whom the defensive force was used (had a right to be
> in) (was a lawful resident of) the (residence) (vehicle).
> (B) the defendant used the defensive force while in a (residence) (vehicle)
> and he/she was unlawfully, and without privilege to be, in that (residence)
> (vehicle)."

This instruction, like the statute, delineates two circumstances when the statute does not apply.   To

the extent the instructions can be construed to imply that these are the only two means by which

the state may rebut the presumption under R.C. 2901.05(B)(3), we believe that the instruction is

not a correct statement of the law.

{¶ 54} Having clarified the means by which the state may rebut the presumption, we can now consider whether the jury could have found the presumption applicable, but that the state rebutted it. The jury may have believed that Pig was in the process of unlawfully entering the vehicle, yet determined that appellant was not in imminent danger of death or great bodily harm and his only means of escape was to shoot the gun.

{¶ 55} The second element of self-defense requires a defendant to show that the defendant had a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape was the use of deadly force. Goff at ¶36. This second element "is a combined subjective and objective test." Thomas, 77 Ohio St.3d at 330. The person's belief must be objectively reasonable under the circumstances and he must subjectively believe he needed to resort to force to defend himself. Id. at 330–331.

> "The objective part of the test requires consideration of 'whether, considering all of the defendant's particular characteristics, knowledge, or lack of knowledge, circumstances, history, and conditions at the time of the attack,' a reasonable person would believe that danger was imminent."

State v. Hendrickson, 4th Dist. No. 08CA12, 2009-Ohio-4416, ¶30, quoting State v. Keith, Franklin App. Nos. 08AP-28, 08AP-29, 2008-Ohio-6122, ¶23, citing Thomas, 77 Ohio St.3d at 330. The subjective part requires consideration of whether the defendant himself actually believed that he was in imminent danger. Id.

{¶ 56} Another component contained within the second element is the defendant's bona fide belief that the use of force was the only means of escape. Part of this entails a showing that the defendant used "only that force that is reasonably necessary to repel the attack." Hendrickson

at ¶23, citing State v. Williford, 49 Ohio St.3d 247, 249, 551 N.E.2d 1279 (1990), citing State v. McLeod, 82 Ohio App. 155, 157, 80 N.E.2d 699 (1948).   In other words, a defendant must show that "that the degree of force used was 'warranted' under the circumstances and 'proportionate' to the perceived threat."   Hendrickson at ¶31, citing State v. Palmer, 80 Ohio St.3d 543, 564, 687 N.E.2d 685 (1997).   "If * * * the amount of force used is so disproportionate that it shows an 'unreasonable purpose to injure,' the defense of self-defense is unavailable."   State v. Macklin, 8th Dist. No. 94482, 2011-Ohio-87, ¶27, quoting State v. Speakman, Pickaway App. No. 00CA035, 2001-Ohio-2437.

{¶ 57} This rule applies even if a defendant is attacked in his residence or vehicle.   A defendant who is attacked in his or her residence or vehicle does not possess a license to kill. Attorney General Publication, supra, at 21-22 (stating that "being a lawful occupant of a residence or vehicle is not a license to use deadly force against an attacker," but instead, "[t]he person who is attacked, without fault of his own, may use deadly force only if he reasonably and honestly believed that deadly force was necessary to prevent serious bodily harm or death.").[8]   Instead, the defendant may only use deadly force if necessary to prevent death or great bodily injury.   Thomas, 77 Ohio St.3d at 327 (stating that defendant attacked in own home may use deadly force "if necessary"); State v. Seymour, 4th Dist. No. 90CA38 (Nov. 9, 1993) (rejecting argument that defendant may use "any force necessary to repel her attacker"); State v. Miskimins, 435 N.W.2d

_____

[8]   The Attorney General's Publication further explains:

"If the person does not [reasonably and honestly believe[] that deadly force was necessary to prevent serious bodily harm or death], he should not use deadly force.    Again, if it does not put your life or the life of others in danger, you should withdraw from the confrontation if it is safe for you to do so."

217, 222 (S.D.1989), quoted in State v. Pelligrino, 577 N.W.2d 590, 595 (S.D.1998) (stating that

"[h]ome is a shelter and a refuge, not 'a free-fire zone'"). "'Any civilized system of law

recognizes the supreme value of human life, and excuses or justifies its taking only in cases of

apparent absolute necessity.'" Pelligrino, 577 N.W.2d at 596, quoting People v. Jones, 12 Cal.

Rptr. 777, 780 (1961). Thus, when "'the character and manner of the [attack] do not reasonably

create a fear of great bodily harm, there is no cause for the exaction of human life.'" Id., quoting

People v. Ceballos, 12 Cal.3d 470, 116 Cal. Rptr. 233, 238, 526 P.2d 241, 246 (1974).

{¶ 58} This rule does no violence to the castle doctrine. Contrary to popular opinion, the

castle doctrine is not intended to be a license to kill. See Attorney General Publication, supra.

Instead, under the castle doctrine, the amount of force a defendant used to repel the attacker is

presumptively reasonable. The castle doctrine presumes that the amount of force used was

necessary and unavoidable. Thus, when a defendant is attacked in his home or vehicle, the

defendant "'"may use all necessary force to eject the intruder, whom [the defendant] may kill in

doing it, if this extreme measure seems unavoidable."'" Pelligrino, 577 N.W.2d at 596, quoting

Russell v. State, 54 So. 361 (Fla.1911), quoting 1 Bishop's Crim. Law, Section 859. "On the

other hand, people 'do not hold their lives at the mercy of unreasonable fears or excessive caution

of others, and if from such motives human life is taken, there is no justification.'" Pelligrino at

597, quoting Harris v. State, 104 So.2d 739, 744 (Fla.Ct.App.1958). The state, therefore, may

rebut the presumption that the defendant's use of force was necessary and unavoidable.

{¶ 59} In the case at bar, we believe that the jury may have found that appellant's use of

deadly force was unnecessary and avoidable. The jury may have believed that instead of using

deadly force, (i.e., shooting the gun), appellant could have escaped the confrontation simply by

telling his brother to drive away from the Harris brothers. The vehicle in which appellant was seated provided him with a means of escape. Had he and his brother left the scene, the shooting may never have happened. Under these circumstances, the jury could have found the self-defense presumption rebutted.

{¶ 60} This is not to suggest that appellant had a duty to retreat. Under R.C. 2901.09,[9] appellant had no duty to retreat while in his vehicle. We believe, however, that the no-duty-to-retreat rule, like the castle doctrine, is not a license to kill.

{¶ 61} Additionally, the jury could have determined that it was not objectively reasonable for appellant to believe that Pig posed an imminent danger of death or great bodily harm. Appellant was seated in a vehicle with a gun. Pig was standing outside the vehicle, and, according to the state's witnesses, was unarmed. Moreover, some of the state's witnesses disputed appellant's claim that Pig was attempting to drag him from the vehicle. They stated that they did not see Pig attempt to drag appellant from the vehicle. Thus, the jury may have concluded that the evidence failed to demonstrate that appellant reasonably felt an imminent danger of death or great bodily harm. Consequently, we disagree with appellant that the state could not have rebutted the self-defense presumption when it failed to present evidence that one of the two R.C. 2901.05(B)(2) circumstances applied. Instead, the jury may have determined that the state rebutted the presumption by demonstrating that appellant used more force than reasonably necessary or that it

---

[9] R.C. 2901.09(B) states:

    For purposes of any section of the Revised Code that sets forth a criminal offense, a person who lawfully * * * is an occupant of that person's vehicle or who lawfully is an occupant in a vehicle owned by an immediate family member of the person has no duty to retreat before using force in self-defense or defense of another.

was not objectively reasonable for appellant to have believed that Pig posed an imminent danger of death or great bodily harm.

{¶ 62} For these same reasons, we reject appellant's argument that the manifest weight of the evidence establishes that he acted in accordance with the traditional notion of self-defense. Even using the traditional elements of self-defense without regard to the castle doctrine, the jury may have found that appellant used more force than reasonably necessary or that it was not objectively reasonable for appellant to believe that Pig posed an imminent danger of death or great bodily harm. Consequently, based upon our review of the record, we cannot state that the jury clearly lost its way when it rejected appellant's self-defense theory.

{¶ 63} Accordingly, based upon the foregoing reasons, we overrule appellant's first assignment of error.

II

{¶ 64} In his second assignment of error, appellant asserts that the trial court abused its discretion by instructing the jury that the state could rebut the self-defense presumption by establishing that appellant did not meet the three common law self-defense elements. Appellant argues that once the R.C. 2901.05(B) presumption applies, the statute allows the state to rebut the presumption in only two ways: (1) by showing that the person against whom the defendant used defensive force had a right to be in the vehicle; or (2) the defendant used defensive force while in the vehicle unlawfully. He contends that if the presumption applies, the state cannot rebut the presumption by demonstrating that he did not act in accordance with common law self-defense. Appellant thus asserts that the trial court's instruction to the jury was a misstatement of the law.

{¶ 65} Initially, we question whether appellant properly preserved this alleged error. He

filed proposed jury instructions that mirrored the Ohio Pattern Jury Instructions, which do not include   language that the state may rebut the presumption by presenting evidence regarding the three self-defense elements.   After the court finished instructing the jury, counsel stated that it requested, "McClellan Instruction in 427."   The record does not reveal the specifics of this instruction.   Moreover, appellant has not pointed to the record where he specifically questioned whether the court's self-defense rebuttal instructions were correct.   Instead, he raised a general objection that the court should have given his requested instruction.

{¶ 66}  Under Crim.R. 30(A) "a party may not assign as error the giving or failure to give any instruction unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection."   (Emphasis added).   When a party fails to properly object, then the party waives all but plain error.   See State v. Conway, 109 Ohio St.3d 412, 2006–Ohio–2815, 848 N.E.2d 810, ¶51; State v. Underwood (1983), 3 Ohio St.3d 12, 444 N.E.2d 1332, syllabus.   In the case at bar, appellant generally objected to the court's failure to give his requested instruction.   Appellant did not, however, specifically object to the court's rebuttal instructions.   Thus, except for plain error, appellant has waived this issue.

{¶ 67}  Plain error exists when the error is plain or obvious and when the error "affect[s] substantial rights."   Crim.R. 52(B).   The error affects substantial rights when "'but for the error, the outcome of the trial [proceeding] clearly would have been otherwise.'"   State v. Litreal, 170 Ohio App.3d 670, 2006–Ohio–5416, 868 N.E.2d 1018, ¶11, quoting State v. Barnes, 94 Ohio St.3d 21, 27, 2002–Ohio–68, 759 N.E.2d 1240.   Courts ordinarily should take notice of plain error "with utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice."   State v. Gardner, 118 Ohio St.3d 420, 2008–Ohio–2787, 889 N.E.2d 995, ¶78; State v.

Patterson, 4th Dist. No. 05CA16, 2006–Ohio–1902, ¶13.   A reviewing court should consider

noticing plain error only if the error ""''seriously affect[s] the fairness, integrity or public reputation

of judicial proceedings."''"   Barnes, 94 Ohio St.3d at 27, quoting United States v. Olano, 507 U.S.

725, 736, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993), quoting United States v. Atkinson, 297 U.S.

157, 160, 56 S.Ct. 391, 80 L.Ed. 555 (1936).   In the case sub judice, we do not believe that plain

error exists.

{¶ 68}   Generally, a trial court has broad discretion to decide how to fashion jury

instructions.   The trial court must not, however, fail to "fully and completely give the jury all

instructions which are relevant and necessary for the jury to weigh the evidence and discharge its

duty as the fact finder." State v. Comen, 50 Ohio St.3d 206, 553 N.E.2d 640 (1990), paragraph two

of the syllabus.   Additionally, a trial court may not omit a requested instruction, if such instruction

is "'a correct, pertinent statement of the law and [is] appropriate to the facts * * *.'"   State v.

Lessin, 67 Ohio St.3d 487, 493, 620 N.E.2d 72 (1993), quoting State v. Nelson, 36 Ohio St.2d 79,

303 N.E.2d 865 (1973), paragraph one of the syllabus.

{¶ 69}   "In examining errors in a jury instruction, a reviewing court must consider the jury

charge as a whole and 'must determine whether the jury charge probably misled the jury in a matter

materially affecting the complaining party's substantial rights.'"   Kokitka v. Ford Motor Co., 73

Ohio St.3d 89, 93, 652 N.E.2d 671 (1995), quoting Becker v. Lake Cty. Mem. Hosp. W., 53 Ohio

St.3d 202, 208, 560 N.E.2d 165 (1990).   Whether the jury instructions correctly state the law is a

question of law which we review de novo.   State v. Neptune, 4th Dist. No. 99CA25 (Apr. 21,

2000).

{¶ 70}   In the case sub judice, we do not believe that the trial court misstated the law when

it instructed the jury that it could find that the state rebutted the self-defense presumption if it found that (1) appellant was at fault, (2) appellant did not hold an honest and reasonable belief that he was in imminent danger of death or great bodily harm and that the use of force was his only means of escape, and (3) appellant violated a duty to retreat.   As we explained under our discussion of appellant's first assignment of error, we do not agree with appellant's assertion that R.C. 2901.05(B)(3) limits the state's ability to rebut the presumption to only those circumstances specified under R.C. 2901.05(B)(2).   Instead, we believe that the state may rebut the presumption by proving that the defendant did not act in accordance with the three elements necessary to establish self-defense.   For these reasons, the trial court's jury instructions were not erroneous, plain or otherwise.

{¶ 71} Accordingly, based upon the foregoing reasons, we overrule appellant's second assignment of error and affirm the trial court's judgment.

JUDGMENT AFFIRMED.

JUDGMENT ENTRY

It is ordered that the judgment be affirmed and that appellee recover of appellant the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Pike County Common Pleas Court to carry this judgment into execution.

If a stay of execution of sentence and release upon bail has been previously granted, it is continued for a period of sixty days upon the bail previously posted. The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of the proceedings in that court. The stay as herein continued will terminate at the expiration of the sixty day period.

The stay will also terminate if appellant fails to file a notice of appeal with the Ohio Supreme Court in the forty-five day period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to the expiration of said sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Harsha, J.: Concurs in Judgment & Opinion
McFarland, J.: Concurs in Judgment Only

For the Court

BY:                    
Peter B. Abele
Presiding Judge

## **NOTICE TO COUNSEL**

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.